1
2
3
4
5
6
7          IN THE UNITED STATES DISTRICT COURT FOR THE
8                   EASTERN DISTRICT OF CALIFORNIA
9

10   ERNEST MERRILL and          )     CV F 05-0195  AWI SMS
     LILA MERRILL,               )
11                               )
                   Plaintiffs,   )     MEMORANDUM OPINION AND
12                               )     ORDER ON DEFENDANTS' RULE
        v.                       )     12(b) MOTION
13                               )
     COUNTY OF MADERA, ET.AL.,   )
14                               )     (Document #7)
                                 )
15                               )
                   Defendants    )
16   _____)

17

18        This action arises from Defendants' alleged denial of several permits to Lila and Ernest

19   Merrill, husband and wife ("Plaintiffs"), and to Ernest Merrill as an individual ("Plaintiff"),

20   which interfered with Plaintiffs' use of their property.  The court has jurisdiction over the civil

21   rights claims pursuant to 28 U.S.C. § 1331.  Defendants request dismissal of all counts in the

22   complaint with the exception of Count 3.  Defendants make such request on the basis that Count

23   2 is defective and Counts 1, 4, 5, and 6 are novel counts that are each fatally defective as pled.

24                              **PROCEDURAL HISTORY**

25        On February 11, 2005, Plaintiffs filed a complaint with a demand for a jury trial.  Count 1

26   alleges a violation of Plaintiff's First Amendment rights in that he was denied an application for

27   a grading permit and also ordered to leave a government building.  Count 2 alleges a violation of

28   the Takings, Procedural Due Process and Substantive Due Process clauses such that Plaintiffs

suffered a deprivation of their land and were deprived of any opportunity for a hearing on the subject.  Count 4 alleges a violation of the Commerce Clause in that Plaintiffs were denied a permit which would allow them to eventually place products into the stream of commerce.  Count 5 alleges a violation of the Contract Clause in that the denial of permits led to a substantial impairment of Plaintiffs' contract with a third party.  Count 6 alleges a violation of the California Public Records Act in that Plaintiffs were unable to access the records needed in order to aid them in this lawsuit.

On March 11, 2005, Defendants filed a 12(b)(6) Motion to Dismiss.  Defendants contend that Plaintiffs' Count 1 First Amendment claims fail to allege Plaintiffs were restrained from any speech.  Defendants also contend that Count 2, premised on substantive due process, takings and procedural due process issues, fails to state a claim or in the alternative, requires a more definite statement.  Defendants further argue that Plaintiffs' Commerce Clause count must fail because they lack standing to raise such a violation.  Defendants also argue that Plaintiffs' Contract Clause count is invalid because the grading regulations preexisted any contractual relationship between Plaintiffs and another party.  Finally, Defendants contend that Plaintiffs' count alleging a violation of the California Public Records Act must fail because such an allegation must only be pursued in a California Superior Court.

On April 8, 2005, Plaintiffs filed an Opposition to the Motion to Dismiss.

On April 18, 2005, Defendants filed a Response in support of the Motion to Dismiss.

## FACTUAL ALLEGATIONS

**A.  Complaint's Factual Allegations**

On or about April 9, 2002, Plaintiffs purchased approximately 4, 500 acres of land in Madera, California.  The land was purchased with the intent to subdivide the land and retain approximately 2,500 acres for themselves.  Prior to the date of purchase, the ranch contained an existing road that provided the only reasonable access from the public road and throughout the ranch.

1      After the date of purchase, Plaintiff went to the Madera County Planning Department and

2  met with Manuel Ruiz to inquire about obtaining permits to grade a pad for his home and barn,

3  build a septic tank, and maintain the existing road.  Mr. Ruiz told Plaintiff that a permit was not

4  necessary to grade the existing road but a permit was needed to grade a pad for his home and

5  barn and for the septic tank.  The appropriate permits were secured, and Plaintiffs began the work

6  to grade the road.

7      In May 2002, Plaintiffs purchased a barn and mobile home.  The barn and home were

8  both placed at the end of the existing road.

9      On or about June 2002, during construction, Defendant Gary Gilbert's wife entered the

10  property without permission and inquired as to the activities of the construction workers.  Upon

11  informing her that they were grading a lot for a home and an accompanying barn, she voiced her

12  objection to the placement of the home.

13      On or about June 21, 2002, Defendant County posted a "Stop Work Notice" in 16 point

14  type, seven miles from the construction site.  Plaintiffs allege that they never received actual

15  notice from this posting.

16      On or about June 2002, Tom Graham of the Madera Engineering Department arrived on

17  the property during the grading process of the existing road.  Mr. Graham advised Plaintiff that

18  he needed a permit to grade the road and that a "Stop Work Notice" had already been posted on

19  the south end of the ranch.  Plaintiff ceased grading the road after this date.

20      On or about June 2002, Plaintiff went to the Planning Department with his contractor.

21  Plaintiff met with Mr. Ruiz.  While Mr. Ruiz recalled telling Plaintiff that he did not need a

22  permit to grade the existing road, he stated that now a permit was needed.  Consequently,

23  Plaintiff requested a permit.  Instead, Plaintiff was given an appointment to obtain a permit at a

24  later date.  Plaintiff returned to the Planning Department on the date and time of the established

25  appointment.  He was met by Mr. Ruiz, Defendant Mark Meyers, Mr. Graham and one other

26  individual.  Plaintiff asked for and was denied a permit to grade his existing road.  Plaintiff was

27

28                        3

not advised as to the reason for the denial.

On or about June 28, 2002, while construction was underway at the home site, Mr. Ruiz arrived and gave Plaintiff a citation for grading without a permit.  Plaintiff immediately stopped all grading activities.  Defendant Angela Basch claims that she conducted an investigation into this incident.  Plaintiff alleges that the file was created at the behest of Defendant Gilbert.

On or about July 1, 2002, Mr. Ruiz gave District Attorney Licalsi a Request for Warrant for Plaintiff's arrest.  The document alleged that Plaintiff continued to grade the existing road after receiving a citation on or about June 28, 2002.  Plaintiff alleges that no other individuals have been arrested for violating a  "Notice of Stop Work."

Plaintiff and his attorney, Harry Pascuzzi, made an appointment with the Planning Department to resolve and discuss all issues involving permits.  Upon their arrival at the July 9, 2002 meeting, Plaintiff was arrested.  A criminal complaint was subsequently filed, alleging fifteen misdemeanor counts for grading without a permit.  Eventually, all criminal charges alleging permit violations were dismissed.[1]

On or about late 2002, Mr. Garoupa, an employee and agent of the Planning Department, spoke at a recorded town hall meeting.  In that meeting, Mr. Garoupa stated that a permit was unnecessary for Class I road fire protection where an individual grades a private road for access to his personal residence.

Plaintiff alleges that Defendants delayed and interfered with Plaintiff's attempts to secure other permits.  On or about August 22, 2002, attorney Pascuzzi sent a letter to Defendant Meyers inquiring why a building permit was being delayed and requesting that Defendant Meyers relay the reason of such delay.  Plaintiffs allege that there was no response to the letter.

On or about January 7, 2003, attorney Jamison, on behalf of Plaintiff, sent a follow up letter to Defendant Meyers.  In the letter, Jamison advised Defendant Meyers that the Madera

---

[1] However, two counts of Fish and Game violations, offenses not arising from failure to obtain a grading permit, were amended and added to the complaint.  Plaintiff entered a no contest plea as to the two Fish and Game counts.

County Building Code provided a private road exemption from the requirement that a permit is required to commence grading activities. Jamison also requested clarification on the law that was restricting Plaintiff from continuing his grading activities. Plaintiffs allege that Defendant County did not respond to Jamison's request for clarification regarding which law was keeping Plaintiff from grading the existing road.

On or about February 4, 2003, Defendant County, under the reasoning that Plaintiff lacked the appropriate grading permit, refused to allow Plaintiff to build a deck on his mobile home. Jamison sent a letter to Defendant County's counsel. The letter requested clarification as to why a grading permit was required to build a deck in light of the fact that no grading was necessary to install a deck. Plaintiffs allege that there was no response to this letter.

On or about September 22, 2003, Defendant County refused to allow Plaintiff a permit to install his barn because of alleged existing violations. Jamison again sent a letter to Defendant County's counsel. The letter stated that there should be no impediment to issuing a building permit because Madera County ordinances state that pre-existing parcels are exempt from the requirements of a Class I road. The letter also requested a written determination from Defendant County that would affirm their official position that prior to issuance of a building permit, Class I roads must be built on all pre-existing parcels. Further, the letter stated that written determination was necessary so that Plaintiff could appeal to Defendant County's Board of Supervisors. The complaint alleges that Defendants have not clearly or fully responded to this correspondence.

On September 23, 2003, the Assistant Engineer for Defendant County sent a letter to Plaintiffs' land surveyor. The letter stated that the proposed grading permit for the existing road was not accepted because more information was necessary. On October 21, 2003, in response to the Assistant Engineer's letter, Jamison sent a letter to the Deputy RMA Director for Defendant County, stating that it had been more than eight months since clarification about Plaintiff's permit requirements was requested. The attorney stated that PRC 429 and 1270.02 do not apply

to existing roads and that 1270.02(e) specifically exempts roads for agricultural use under one owner.  Again, the attorney requested a response and a set of conditions, in writing, so that the matter could be appealed to the Board of Supervisors.

Shortly thereafter, Plaintiff paid the full amount for and received from Defendant County a "Stream Bed Alteration/Road Grading" permit to grade the existing road.

Plaintiff sold Craig Schub a parcel of the ranch that abuts to the main road.  Plaintiff maintained an easement over this parcel in order to use the existing road to access the remainder of the ranch.  Plaintiff has exercised the easement, used it, and maintained it.  Part of the sales contract stated that Plaintiff was to grade and maintain the road.

On March 21, 2004, Plaintiff attempted to renew his "Stream Bed Alteration/Road Grading" permit and paid the full filing fee.  On March 30, 2004, Defendant County sent Plaintiff a letter that stated his renewal permit had been cancelled and his check was being returned because he no longer owned the property.  Plaintiff immediately visited the Planning Department and contacted Defendant Basch.  He explained that he had retained an easement to the parcel and needed a grading permit to maintain the existing road.  Defendant Basch told Plaintiff that she would not issue him another permit, and ordered Plaintiff to leave the building.  The pattern and practice of Defendant County is to grant other similarly situated persons a renewal of permit upon payment of fee.

Plaintiff made several other attempts to obtain a permit.  In September 2004, when Plaintiff asked Defendant Basch for an application for a grading permit, he was refused an application.  He then asked for a hearing to challenge all denials.  Defendant Basch agreed to give Plaintiff a hearing and set a date for it.  Upon learning that Plaintiff planned on bringing his attorney to the meeting, she immediately cancelled the hearing.

On September 24, 2004, attorney Layne Hayden sent a written demand for a hearing to Defendant County.  Plaintiffs allege that Defendant County has never granted them a hearing.

Because Plaintiff has not completed the grading nor maintenance to the road, Mr. Schub

6

1  has threatened a lawsuit against Plaintiff for breach of contract.

2          On or about January 2005, Mr. Ruiz met with a private investigator. The investigator told

3  Mr. Ruiz that Plaintiffs were under the impression that Mr. Gilbert was the source of the

4  problems and delays.  Mr. Ruiz admitted to the investigator that a person who was a very

5  prominent citizen as well as a neighbor of Plaintiffs' was the complaining party.  Mr. Ruiz

6  additionally admitted that he had a large volume of notes about Plaintiffs' case.

7          The complaint alleges Defendants improperly claim a Class I road is required.  Plaintiffs

8  allege several damages stemming from Defendants' continued denial of permits, especially a

9  permit to grade the existing road.  These conditions include the continuing lack of reasonable

10  access to the ranch, the ultimate deterioration of the uninstalled barn, the continued inability to

11  transport cattle, the loss of the value of a contract to graze cattle and the inability to subdivide the

12  property as initially intended.

13  **B. Complaint's Request for Judicial Notice**

14          Both Defendants and Plaintiffs request judicial notice of their respective exhibits. First,

15  Defendants request that the court take judicial notice of Madera County Code Section 14.50.050,

16  entitled "Permit Application," which states the requirements to obtain a grading permit in

17  Madera County.  Second, Plaintiffs request that the court take judicial notice of eight submitted

18  exhibits.[2]  Plaintiffs' exhibits consist of the following: (1) a Madera County grading ordinance;

19  (2) a Madera County Superior Court case; (3) a Madera County Resource Management official

20  notice of the cancellation of a permit; (4) a Madera County Administrative Management official

21  notice of denial of claim against the county and accompanying records; (5) a Madera County

22  Board of Supervisors request for an administrative hearing; and (6)  the Nevada Secretary of

23  State corporate record of Plaintiffs' ranch.

24          "A judicially noticed fact must be one not subject to reasonable dispute in that it is either

25

26          [2]  Plaintiffs only request that exhibits 6 and 7 be noticed in the situation that Defendants
    raise an affirmative defense.  Defendants did not do so, thus these two exhibits will not be
27  examined by the court.

28                                                 7

(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  "A court shall take judicial notice if requested by a party and supplied with the necessary information." Fed. R. Evid. 201(d).  Judicially noticed facts often consist of matters of public record, such as prior court proceedings.  See, e.g., Emrich v. Touche Ross & Co., 846 F.2d 1190, 1198 (9th Cir. 1988) (administrative materials), Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994) (city ordinances), Toney v. Burris, 829 F.2d 622, 626-27 (7th Cir. 1987) (city ordinances and official maps), Aiello v. Town of Brookhaven, 136 F. Supp. 2d 81, 86 n.8 (E.D.N.Y. 2001) (geological surveys and existing land use maps), and Rothman v. Gregor, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of a filed complaint as a public record).  Federal courts may "take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue." U.S. ex rel Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992).  As such, both Defendants' exhibit and Plaintiffs' exhibits are subject to judicial notice.

While the court may take judicial notice of the general meaning of words, phrases, and legal expressions, documents are judicially noticeable only for the purpose of determining what statements are contained therein, not to prove the truth of the contents or any party's assertion of what the contents mean. See, e.g., Hennessy v. Penril Datacomm Networks, Inc. 69 F.3d 1344, 1354-55 (7th Cir. 1995); Wilshire Westwood Assocs v. Atlantic Richfield Corp., 881 F.2d 801, 803 (9th Cir. 1988).  Thus, while the court takes judicial notice of the documents submitted by the parties, no documents will be considered for the truth of the facts asserted therein.

## LEGAL STANDARD

### A.    Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed for a plaintiff's "failure to state a claim upon which relief can be granted." Fed R. Civ. P. 12(b)(6).  A Rule 12(b)(6) motion to dismiss for failure to state a claim is disfavored  see Conley v. Gibson,

355 U.S. 41, 45-46 (1957), and may be granted only in extraordinary circumstances, see Gilligan v. Jamco Develop. Corp., 108 F.3d 246, 249 (9th Cir.1997).  "In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).   A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that plaintiff can prove no set of facts in support of the claim that would entitle him to relief.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); see also Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).  In deciding a Rule 12(b)(6) motion, courts do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." Western Mining Council v. Watt, 643 F.2d 618, 624 (9th  Cir.1981).

        In considering the motion, Rule 12(b)(6) mandates that extrinsic evidence cannot be considered without converting the motion into a summary judgement motion.  However, the court may consider documents of which the court may take judicial notice. Lee v. City of Los Angeles, 250 F.3d 688, 689 (9th Cir. 2001).

         "If a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc., 806 F.2d 1393, 1401 (9th Cir. 1986).  Absent unusual circumstances, dismissal without leave to amend is improper unless it is clear that the complaint could not be saved by amendment.  Chang v. Chen, 80 F.3d 1293, 1296 (9th Cir. 1996).

**B.     Rule 12(e)**

        "[I]f a pleading to which a responsive reading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading."  Fed. R. Civ. P. 12(e);

1    Thompson v. City of Shasta Lake, 314 F.Supp.2d 1022 (E.D. Cal. 2004).  A Rule 12(e) motion is
2    "ordinarily" restricted to situations where a pleading suffers from unintelligibly rather than want
3    of detail, and if the requirements of the general rule as to pleadings are satisfied and the opposing
4    party is fairly notified of the nature of the claim such motion is inappropriate."  Castillo v.
5    Norton, 219 F.R.D. 155, 163 (D. Ariz. 2003); Sheffield v. Orius Corp., 211 F.R.D. 411, 414-15
6    (D. Or. 2002); Tilley v. Allstate Ins. Co., 40 F.Supp.2d 809, 814 (S.D. W. Va 1999); see also
7    Resolution Trust Corp. V. Gershman, 829 F.Supp. 1095, 1103 (E.D. Mo. 1993) ("Rule 12(e)
8    provides a remedy for unintelligible pleadings; it is not intended to correct a claimed lack of
9    detail.").  Rule 12(e) motions "are not favored by the courts 'since pleadings in the federal courts
10   are only required to fairly notify the opposing party of the nature of the claim'."  Castillo, 219
11   F.R.D. at 163; Resolution, 854 F.Supp. at 649.  Rule 12(e) motions are "not to be used to assist
12   in getting facts in preparation for trial as such; other rules relating to discovery, interrogatories
13   and the like exist for such purposes."  Castillo, 219 F.R.D. at 163; Sheffield, 211 F.R.D. at 415;
14   Tilley, 40 F.Supp.2d at 814.  "[A]bsent special circumstances, a Rule 12(e) motion cannot be
15   used to require the pleader to set forth "the statutory or constitutional basis for his claim, only the
16   facts underlying it."  Thompson, 314 F.Supp.2d at 1022.

17   **C.     Rule 12(b)(1)**

18        Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a motion to dismiss for lack
19   of subject matter jurisdiction.  "It is a fundamental precept that federal courts are courts of
20   limited jurisdiction."  Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978),
21   *superceded by statute*.  Limits upon federal jurisdiction must not be disregarded or evaded.  Id.
22   The plaintiff has the burden to establish that subject matter jurisdiction is proper.  Kokkonen v.
23   Guardian Life Ins. Co., 511 U.S. 375, 377 (1994).  This burden, at the pleading stage, must be
24   met by pleading sufficient allegations to show a proper basis for the court to assert subject matter
25   jurisdiction over the action.  McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189
26   (1936); Fed. R. Civ. P. 8(a)(1).  When a defendant challenges jurisdiction "facially," all material

28                                      10

1  allegations in the complaint are assumed true, and the question for the court is whether the lack

2  of federal jurisdiction appears from the face of the pleading itself.  Thornhill Publishing Co. v.

3  General Telephone Electronics, 594 F.2d 730, 733 (9th Cir. 1979);  Mortensen v. First Fed. Sav.

4  & Loan Ass'n, 549 F. 2d 884, 891 (3d Cir.1977); Cervantez v. Sullivan, 719 F. Supp. 899, 903

5  (E.D. Cal.1989), *rev'd on other grounds*, 963 F. 2d 229 (9th Cir. 1992).

6  **DISCUSSION**

7  Plaintiffs proceed in their civil law suit against Defendant County of Madera as well as

8  named and unnamed individuals pursuant to 42 U.S.C. Section 1983.  Section 1983 states in

9  relevant part that "every person who, under color of statute, ordinance, regulation, custom, or

10  usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United

11  States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution

12  and laws, shall be liable to the party injured in an action at law."[3]  "Section 1983 is not itself a

13  source of substantive rights, but merely provides a method for vindicating federal rights

14  elsewhere conferred."  Albright v. Oliver, 510 U.S. 266, 271 (1994), quoting Baker v. McCollan,

15  443 U.S. 137, 144, n.3 (1979).  The origination of a Section 1983 claim begins with the

16  identification of the particular "constitutional right allegedly infringed." Albright, 510 U.S. at

17  271 (1994).

18  **A.**   **Count 1 Allegations of Prior Restraint and Denial of Access to Government**

19      **Building**[4]

20      **1.**   **Prior Restraint Allegation**

21  Defendants challenge the Count 1 prior restraint allegation on the ground that it fails to

22  allege any expressive conduct.  Plaintiffs allege that the denial of a grading permit application

23  ─────────────

24  [3] The court strikes references to 28 § U.S.C. 1985 and 28 U.S.C. § 1986 as Plaintiffs have
made no allegations of racial inequities.

25  [4] Due to the fact that Plaintiffs' complaint presents no California "gateway" code sections
26  which would provide a private right of action, they cannot rely on the California Constitution as a
basis for relief. Therefore, any references to the California Constitution are disregarded by the
27  court.

28  11

resulted in a violation of Plaintiff's freedom of speech under "U.S., Const. 1st Amendment."

Actual speech or expressive conduct that conveys a particularized message or idea is necessary to

establish a prior restraint claim.  See Spence v. Washington, 418 U.S. 405, 410 (1974) (speech or

symbolism must be backed by "[a]n intent to convey a particularized message" or expression

protected by the First Amendment); Kingsley Intern. Pictures Corp. v. Regents of University of

State of N.Y., 360 U.S. 684 (1959) (First Amendment's basic guarantee is that of freedom to

advocate ideas).  At the minimum, a plaintiff needs to allege facts that establish a restraint of

"speech" or "communication."  See, e.g., Southeastern Promotions v. Conrad, 420 U.S. 546, 558

(1975), *abrogation on other grounds*, (analyzing whether conduct was protected "speech" under

the First Amendment before determining whether a municipal board had exercised prior

restraint).  Here, Plaintiffs do not present any facts that rise to the level of "speech" or even

"communication."  The facts that Plaintiffs do present in the complaint are that Plaintiff paid the

full amount for and received from Defendant County the appropriate grading permit and was

denied when he attempted to renew the permit.  These facts concerning the renewal are not

details which establish a form of speech or communication.   In addition, Plaintiffs cite no

authority for the premise that the refusal to issue a grading permit rises to the level of "expressive

conduct" or other speech protected under the First Amendment.

Given the foregoing, the court is granting Defendants' motion with regard to the

allegation that "Defendant Angela Basch intentionally, willfully and maliciously denied Plaintiff

an application for a grading permit" in violation of the First Amendment.  Because it appears no

facts could be alleged to state a claim,  leave to amend is not granted.

## 2.      Denial of Access to Government Building Allegation

Defendants argue that Plaintiffs have cited no specific case holding that a municipality's

refusal to accept a permit application or hold a hearing violates the First Amendment.  Plaintiffs

contend that when Plaintiff was ordered to leave the Planning Department, he was denied the right to petition the government for redress of a grievance.  The First Amendment provides that "Congress shall make no law ... abridging ... the right of the people to petition the Government for a redress of grievances."  U.S. Const., amend I.  The right to petition the government for redress of grievances ... in both judicial and administrative forums ... is fundamental to the very idea of the republican form of government.  U.S. v. Cruikshank, 92 U.S. 542, 552 (1875), *abrogated on other grounds*.  The right to petition extends to all departments of the government; indeed, the Supreme Court has made clear that this right of access "governs the approach of citizens or groups of them to *administrative agencies* (which are both creatures of the legislature, and arms of the executive)."  California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972) (emphasis added) (citing Johnson v. Avery, 393 U.S. 483, 485 (1969)); Ex parte Hull, 312 U.S. 546, 549 (1941).

Here, the complaint alleges that in March 2004 Plaintiff attempted to renew his grading permit by submitting the full filing fee.  Plaintiffs aver that in response, Plaintiff received a Planning Department letter which stated that his permit had been cancelled because he no longer owned the property.  In order to obtain his permit, the complaint further alleges that Plaintiff went to the Planning Department to explain that while he no longer owned the particular piece of property at issue, he still maintained an easement which legally required him to continue to grade and maintain the road.  The complaint contends that when Plaintiff arrived at the Planning Department to attempt to renew his grading permit, Defendant Basch directed him to leave the building.  Drawing from the above allegations, Plaintiffs have presented enough facts to proceed under the legal standards set forth above.

13

Given the foregoing, Defendants' motion as to Count 1 is denied with regard to the allegation that Plaintiffs were denied access to a government building.

**B.      Count 2 Allegations of a Substantive Due Process Violation, a Takings Violation and a Procedural Due Process Violation**

**1.      Substantive Due Process Allegation**[5]

Defendants argue that Plaintiffs' count alleging an infringement on Plaintiffs' substantive due process rights is preempted by the Takings Clause.  The crux of Plaintiffs' allegations, Defendants state, rests on a deprivation of the viable economic use of their property because of Plaintiffs' inability to develop their land.  Plaintiffs allege a violation of substantive due process because Defendants "created and applied laws" in such a manner so as to result in Plaintiffs not being able to fully develop Plaintiffs' property.

In order to establish a substantive due process claim, a plaintiff must allege a government deprivation of life, liberty, or property.  Nunez v. City of Los Angeles, 147 F.3d 867, 871 (9th Cir. 1993); see also City of Cuyahoga Falls v. Buckeye Cmty. Hope Found., 538 U.S. 188, 198 (2003).  In the complaint, Plaintiffs allege that Defendants' intentional acts created and applied laws and regulations in an unfair, irrational and arbitrary manner that resulted in Plaintiffs' inability to develop their property.  Plaintiffs allege that they were denied a permit to build a barn which was planned as a housing structure for horses.  They also state that they were stopped from adding a deck onto their mobile home based on Defendants' allegations that Plaintiffs had failed

---

[5] In their Opposition, Plaintiffs assert that the substantive due process claim listed in Count 2 was not in reference to land, but instead to liberty.  Since such information was not provided in the complaint itself,  Plaintiffs must amend the complaint if they wish to pursue such a claim.

to obtain the proper grading permit.  Furthermore, Plaintiffs allege that they were denied a

grading permit which would be instrumental in allowing them to implement their large scale

plans.  Plaintiffs further aver that being denied a permit to grade the existing road, the only

reasonable access to the ranch, bars them not only from subdividing and selling off a portion of

the land, but also denies them the value of a contract to graze cattle because now they have no

reasonably conditioned road on which to transport the animals.  These alleged denials and

interference with necessary permits possibly state a claim for the deprivation of property.

        Ordinarily, to prevail on a substantive due process claim, a plaintiff is required to prove

that "a challenged government action was clearly arbitrary and unreasonable, having no

substantial relation to the public health, safety, morals, or general welfare."  Patel v. Penman 103

F.3d 868, 874 (9th Cir. 1996), quoting Bateson v. Geisse, 857 F.2d 1300, 1303 (9th Cir. 1988).

However, "where a particular amendment provides an explicit textual source of constitutional

protection against a particular sort of government behavior, that Amendment, not the more

generalized notion of substantive due process, must be the guide for analyzing a plaintiff's

claims."  Bateson v. Geisse, 857 F.2d 1300, 1303 (9th Cir. 1988), quoting Albright v. Oliver,

510 U.S. 266 (1994).  Substantive due process cannot supply the basis for a civil rights claim if

the challenged governmental conduct is prohibited by another, more specific, constitutional right.

Graham v. Connor, 490 U.S. 386, 394-95 (1989); Buckles v. King County, 191 F.3d 1127, 1137

(9th Cir. 1999); Macri v. King County, 126 F.3d 1125, 1128 (9th Cir.1997); Armendariz v.

Penman, 75 F.3d 1311, 1319  (9th Cir. 1996).   The Takings Clause contained in the United

States Constitution's Fifth Amendment provides such an explicit source.

        Here, the Count 2 allegations made by Plaintiffs only reference the deprivation of their

15

ability to develop their land. The notion of using "substantive due process to extend

constitutional protection to economic and property rights has been largely discredited."

Armendariz, 75 F.3d at 1318-19.  Therefore, in order to address a deprivation of property interest

alleged in Count 2, Plaintiffs are required to pursue such claim a under the Takings Clause.  The

court's correspondent discussion in regard to the Takings Clause count is found below.

Given the foregoing, Plaintiffs' claim of a violation of substantive due process contained

in Count 2 is dismissed.

### 2.      Takings Allegation

Defendants allege that pursuant to Federal Rules of Civil Procedure Rule 12(b)(1), this

court has no subject matter jurisdiction over Plaintiffs' takings claim because Plaintiffs' takings

count is unripe.  Specifically, Defendants claim that Plaintiffs' count is not ripe because they

have neither exhausted administrative remedies nor sought and been denied just compensation.

Plaintiffs contend that Defendants' "action, inaction and conduct" resulted in the taking of

Plaintiffs' property.

The Fifth Amendment's "Takings Clause," made applicable to the states through the

Fourteenth Amendment, Chicago, B. & Q.R. Co. v. Chicago, 166 U.S. 226, 239 (1897), see also

Dolan v. Tigard, 512 U.S. 374, 383 (1994), requires that "private property [shall not] be taken for

public use, without just compensation."  The amendment also provides that "no person shall be . .

. deprived of . . . property, without due process of law."  Armendariz, 75 F.3d at 1320.

### a.      Ripeness

Before a court may have subject matter jurisdiction over a Takings Clause controversy,

the claim must be ripe.  In order to attain ripeness, the land owner must meet the two independent

conditions set forth in the case of <u>Williamson County v. Hamilton Bank</u> 473 U.S. 172 (1985).

The first prerequisite requires that the land owner obtain a final administrative decision regarding

the application of the regulations to the target property. <u>Williamson County</u>, 473 U.S. at 186

(1985).   The second prerequisite requires that the property owner avail himself of the state's

judicial remedies in an effort to obtain just compensation. <u>Id</u>. at 195.

    **1)     Final Decision**

In order to meet the "final decision" requirement, the land owner must make a

"meaningful application" to develop the target property by requesting a development permit and

variance in order to elicit a final decision from the appropriate authority regarding the challenged

regulation. <u>Christensen v. Yolo County Board of Supervisors</u>, 995 F.2d 161, 164 (9th Cir. 1993);

<u>Kinzli v. City of Santa Cruz</u>, 818 F.2d 1449, 1455 (9th Cir. 1988), *modified on other grounds*.

However, the "property owner is not required to pursue an application through 'unfair

procedures'" <u>MacDonald, Sommer & Frates v. Yolo County</u>, 477 U.S. 340, 350 n.7 (1986) and

the development request need not be for "[an] 'exceedingly grandiose development.'" <u>Id</u>.   If the

plaintiff faces a situation that makes the submission "pointless,"an application need not be made

to the appropriate authority. <u>Christensen</u>, 995 F.2d at164; <u>see</u> <u>also</u> <u>Lucas v. South Carolina</u>

<u>Coastal Comm.</u>, 505 U.S. 1003, 1013 (1992).

The <u>MacDonald</u> court emphasized that the development request need not be "exceedingly

grandiose."  Following the <u>MacDonald</u> standard, Plaintiffs have pled facts that show they made

an initial, reasonable development application to Defendant County.  This application consisted

of a permit to grade the existing road and permits to erect a barn and grade a pad upon which

they planned to build a mobile home.  Thus, under the general rule stated above, Plaintiffs have

17

made an application.

The requirement that the property owner seek a variance and await a final decision has been satisfied.  Plaintiffs received a final decision in that their request for a permit was denied or there was no response to their request.  Not only does a land owner need not pursue an application through unfair procedures, <u>MacDonald</u>, 477 U.S. at 350 n.7, but failure to pursue a variance is excused where doing so would be deemed "pointless."  <u>Christensen</u>, 995 F.2d at 164.  The complaint alleges Plaintiffs were subjected to unfair procedures.  Taking the allegations in the complaint as true, the Defendants in charge of reviewing permits and providing for variances behaved in a consistently unreasonable manner.  The complaint alleges such facts as Plaintiff being denied access to the public facility where Plaintiff needed to make his application, and Defendants ignoring written correspondence directed to Defendants through Plaintiffs' legal counsel.  Also, Madera County Grading Ordinance 14.50.040 purports to allow Plaintiffs to grade their existing road but Defendants appear to have ignored such code in order to bar Plaintiffs from completing the grading.   Also under the alleged facts, the failure to pursue additional remedies with the Defendant County would indeed be "pointless."  Plaintiffs endeavored to discern the rationale behind the alleged delays and revocation of permits by contacting Defendants to schedule an administrative hearing.  The complaint alleges that upon Defendants learning that Plaintiffs planned to bring legal counsel to the hearing, the meeting was immediately cancelled and Plaintiffs were never given another opportunity for such a hearing.  Reviewing the alleged facts, if Plaintiffs did pursue additional permits or possible variances, a final decision would be unlikely due to the allegedly unreasonable and uncooperative behavior of Defendants.  On the basis of the foregoing, the court finds that Plaintiffs have met the first

18

independent prerequisite for ripeness.

**2)     State Proceedings**

To meet the second ripeness requirement for filing a Takings Clause claim in federal court, the property owner must first access state judicial procedures in an attempt to obtain just compensation. <u>Williamson County</u>, 473 U.S. at 195. "This requirement arises from the fact that the Fifth Amendment taking clause, made applicable to the states by the Fourteenth Amendment, is designed not to limit the governmental interference with property rights per se, but rather to secure compensation in the event of otherwise proper interference amounting to a taking." <u>First English Evangelical Lutheran Church v. County of Los Angeles</u>, 482 U.S. 304, 315, (1987). Notwithstanding the requirement that a property owner must first attempt to access state judicial remedies, a land owner need not file a state court action where it would be considered "futile" <u>Williamson County</u>, 473 U.S. at 196-97.

Here, there is no allegation in the complaint that Plaintiffs attempted to access the California state judicial system in order to obtain just compensation. In fact, the complaint alleges that Plaintiffs relegated themselves to written communication with the various local Defendant County government departments. In the culmination of two years of communications between Plaintiffs and Defendants, September 24, 2004 was the final incident which apparently caused Plaintiffs to file suit. On that date, Plaintiffs' attorney, via letter, requested an administrative hearing to review the denial of the contested permits. Instead of filing a case in state court, Plaintiffs filed this action. Thus, the court finds that Plaintiffs' Takings Clause count is not ripe because Plaintiffs never requested just compensation from the state judicial system.

19

**b.      Merits**

Regardless of whether Plaintiffs' takings count is ripe, the complaint fails to allege

sufficient facts to state a claim for a takings violation.  A Takings Clause violation can take two

forms: a physical invasion; or government actions that either do not advance state interests or

deny all economic use of land.  Governmental conduct and regulations that result in the physical

invasion of property are readily considered Takings Clause violations <u>see</u>, <u>Lucas</u>, 505 U.S. at

1015; <u>Penn Central Transp. Co. v. City of New York</u>, 438 U.S. 104, 124-25 (1978),  as are

governmental conduct and regulations that "[do] not substantially advance legitimate state

interests" or "[deny] all economically beneficial or productive use of land." <u>Penn Central

Transp.</u>,  438 U.S. at 124-25;  <u>Agins v. City of Tiburon</u>, 447 U.S. 255, 260 (1980); <u>Lake

Nacimiento Ranch Co. v. San Luis Obispo City.</u>, 841 F.2d 872, 877 (9th Cir.1987); <u>Lucas</u>, 505

U.S. at 1015-16; <u>Macri</u>, 126 F.3d at 1129.  A state's action or conduct that does not deprive a

land owner of all economically beneficial use of his property is not a taking.  <u>See</u>, <u>Penn Central</u>,

438 U.S. at 124-25 (1978); <u>Lakeview Development</u>, 915 F.2d at 1300.  In the case of a violation,

"the economic impact of the regulation on the claimant" and  "the extent to which the regulation

has interfered with distinct investment-backed expectations" should be evaluated. <u>See</u>, <u>Lucas</u>,

505 U.S. at 1019, n.8.

In the complaint there is no allegation of a physical invasion of land; therefore, whether

there are sufficient facts to meet this type of violation need not be discussed.  Plaintiffs do allege

that their property has been subject to a taking that has deprived them of the economic benefit of

their land.  Plaintiffs reason that since they have been denied the permit to grade the only existing

road, there no longer exists any reasonable access to the property.  Therefore, Plaintiffs allege

20

that not only have they been deprived of their investment plans to subdivide a portion of the property but they have also been deprived of the value of a cattle contract because they cannot use the road to transport the animals across the property.  Essentially Plaintiffs' position is that since Plaintiffs have been unable to grade the only road, they cannot use the property at all. Upon further review of the complaint, the alleged facts demonstrate that this is not the case.  The complaint alleges that the mobile home pad has been graded and the mobile home has been installed.  Construction workers, in executing their duties, must have been successfully utilizing this ungraded road in early May 2002 when the mobile home and barn were placed at the end of the existing road.  At that point, the road had not been fully graded, yet the road was readily traversable in order to place the structures.  The complaint implies that the road is at least usable to reach the mobile home.  It is reasonable to believe that Plaintiffs could utilize the structure as their primary home.  Plaintiffs have failed to show that their land has been deprived of "all" economic benefit.

Given the foregoing, the court dismisses the claim with leave to amend.

**3.      Procedural Due Process Allegation**[6]

Defendants argue that Plaintiffs' procedural due process count cannot be heard by this court under the reasoning that the claim is not yet ripe.  Plaintiffs argue that Defendants purposefully denied them any type of review or hearing, thus denying them the opportunity to exhaust their administrative remedies.  A procedural due process claim is also subject to the ripeness requirement of a takings claim that there have been a final decision if the claim arises

---

[6] As Plaintiffs did not properly allege a Fourth Amendment claim in regard to the procedural due process issue in their complaint, the court will not address any issues relating to an "unreasonable seizure" under the Fourth Amendment.

from, or relies on, the same facts as the alleged taking.  <u>Harris v. County of Riverside</u>, 904 F.2d 497, 500 (9th Cir. 1990).  Plaintiffs' procedural due process claim does arise from the same factual basis alleged in the takings claim and as such, Plaintiffs pled enough facts under the takings claim to reach the "final decision" prerequisite of the ripeness standard.  Using the alleged facts found in the Takings Clause discussion, Plaintiffs have pled sufficient facts to demonstrate they made a meaningful application to develop their property and any further requests would be pointless.  Thus, the court finds that Plaintiffs' procedural due process count has pled enough facts to meet the "final decision" ripeness requirement.  Plaintiffs have alleged that they have attempted to obtain a hearing through Defendant County and have been denied any ability to have their grievance heard.  Thus, Plaintiffs can proceed past the ripeness challenge and the court must examine whether Plaintiffs have stated a claim for a violation of their procedural due process rights.  <u>See</u> <u>id</u>.

In order to claim a violation of the Due Process Clause, Plaintiffs must first establish that they have a property interest protected by the clause.  <u>See</u> <u>Board of Regents v. Roth</u>, 408 U.S. 564, 569 (1972); <u>Parks v. Watson</u>, 716 F.2d 646, 656 (9th Cir.1983).  Furthermore, a plaintiff must allege facts that demonstrate that the state has deprived him of that property interest without affording him due process of law.  <u>Brewster v. Bd. of Educ.</u>, 149 F.3d 971, 983 (9th Cir. 1998); <u>Parks</u>, 716 F.2d at 656.  In alleging the deprivation of a property interest, an essential right contained in the Due Process Clause is "the opportunity to be heard." <u>Armstrong v. Manzo</u>, 380 U.S. 545, 552 (1965);  <u>See</u> <u>Memphis Light, Gas & Water Div. v. Craft</u>, 436 U.S. 1, 19 (1978). This "opportunity to be heard" encompasses the fact that before a property interest can be taken, the owner of the interest is entitled to notice and a hearing "at a meaningful time and in a

meaningful manner." <u>Armstrong</u>, 380 U.S. at 552.  The notice must be sufficient to enable the plaintiff to prepare for the hearing in a meaningful way.  <u>See</u> <u>Memphis Light</u>, 436 U.S. at 14.

As due process is a pliable concept, "the determination of what procedures satisfy due process [in a given situation] depends upon an analysis of the particular case in accordance with [a] three-part test." <u>Id</u>.  The three-part test as outlined in <u>Mathews v. Eldridge</u>, 424 U.S. 319 (1976) requires a balancing of the three factors.

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

<u>Mathews</u>, 424 U.S. at 335.  In order to establish these parameters, the <u>Mathews</u> test is first employed by courts to ascertain whether an individual qualifies for a predeprivation hearing instead of a postdeprivation hearing.  <u>Brewster</u>, 149 F.3d at 983-984.  Next, it is utilized as a tool to determine what exact procedures that the hearing - whether predeprivation or postdeprivation - should involve.  <u>Brewster</u>, 149 F.3d at 984.  Gauging the particular contours and eventual outcome of the Mathews test can be difficult as "one cannot accurately predict how any specific case will be decided." <u>Id</u>.

Here, Plaintiffs allege in the complaint that they purchased 4,500 acres of property that they planned on using for their personal retirement plans and for commercial development endeavors.  Given these allegations, Plaintiffs have alleged a distinct interest in property and the use of such property through both personal and professional avenues.  Plaintiffs allege that there was ongoing interference with their efforts to obtain permits for road grading for the mobile

home deck, and for the installation of their barn, and that they finally were completely denied

such permits.  These complete rejections, Plaintiffs contend, fully deny them the opportunity to

develop and access their property for both their personal and commercial plans, essentially

depriving them of the right to enjoy their property.  Thus, the complaint alleges Plaintiffs have

been denied a property interest.  Plaintiffs aver that Defendants' failure to provide them any

process before or after their deprivation even though they attempted to pursue the lawful

administrative remedies afforded them by Defendant County.  In September 2004, Plaintiff made

the first attempt to schedule a hearing to discuss his grievances with the Madera County Board of

Supervisors.  Defendant Basch agreed to the hearing and scheduled a date.  However, upon

learning of Plaintiffs' intent to bring legal counsel to the hearing, the date was immediately

cancelled.  In that same month, Plaintiffs' attorney sent a letter to Defendant County requesting

that a hearing be scheduled.  The complaint alleges that no response has ever been made by

Defendant County nor any of its agents or employees.  In short, Plaintiffs allege that no hearing

has occurred.  Therefore, there is no need to address whether the process given was at a

reasonable time, in a reasonable manner, and Plaintiffs were given the opportunity to prepare for

and be heard at such a proceeding. Under the rule recognized by the Supreme Court, Plaintiffs'

facts are sufficient to state a claim for a procedural due process violation.

Given the foregoing, the court denies Defendants' motion in regard to Plaintiffs'

procedural due process claim.

**C.      Count 4 Allegations of Violation of the Commerce Clause**

Defendants contend that Plaintiffs have failed to state a Commerce Clause claim in Count

4.  Plaintiffs allege a violation of the clause by stating that Defendants' action kept them from

24

placing products into the stream of commerce.

### 1. Standing

"Standing is a necessary element of federal-court jurisdiction." <u>Big Country Foods, Inc.</u> <u>v. Board of Educ. of Anchorage School Dist.</u>, 952 F.2d 1173, 1176 (9th Cir. 1992).  In order to achieve the requirement of standing, a plaintiff must clear two hurdles: constitutional requirements and prudential requirements.  <u>Individuals for Responsible Government, Inc. v.</u> <u>Washoe County By and Through the Bd. of County Com'rs</u>, 110 F.3d 699, 702 -703 (9th Cir. 1997).

First, the plaintiff must address the constitutional prerequisites.  "[T]he irreducible constitutional minimum of standing contains three elements." <u>Id.</u> at 702, citing <u>Lujan v.</u> <u>Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992).  Under these elements, a plaintiff must have "suffered an injury in fact," there must be a "causal connection between the injury and the conduct complained of," and it must be "likely ... that the injury will be redressed by a favorable decision."  <u>Id.</u>  Here, as to the first element, Plaintiffs allege that their inability to grade their road kept them from bringing cattle onto their property to be raised in preparation for slaughter.  This being the case, the facts demonstrate that Plaintiffs suffered an injury to their livelihood.  As to the second element, Plaintiffs allege that Defendants' actions and inactions kept them from obtaining a grading permit, which also directly kept them from transporting cattle onto their property.  Thus, the facts demonstrate that Plaintiffs provide a causal connection between their inability to transport cattle and the Defendants' unwillingness to provide a grading permit.  As to the third element, Plaintiffs' allegation that Defendants' behavior has made them unable to pursue the livelihood of raising, transporting, and sending cattle to slaughter is an injury that

could be rectified by a decision finding that Defendants' failure to provide the desired grading

permit was unlawful.  Therefore, Plaintiffs have met the three constitutional prerequisites.

In addition to meeting the constitutional requirements, a plaintiff must also address a set

of prudential prerequisites in order to have standing.  Valley Forge Christian College v.

Americans United for Separation of Church and State, Inc., 454 U.S. 464, 474 (1982).  In this

regard, a plaintiff must fall within the "zone of interests to be protected or regulated by the statute

or constitutional guarantee in question."  Id. at 475.  Such "zone of interests" test bars review if

a plaintiff's interest is "...marginally related or inconsistent with the purposes implicit in the

(relevant constitutional provision)."  Wyoming v. Oklahoma, 502 U.S. 437, 469 (Scalia, J.,

dissenting) (1992), quoting Clarke v. Securities Industry Assn., 479 U.S. 388, 399 (1987).  The

test also "governs claims under the Constitution in general, and under the negative (dormant)

Commerce Clause in particular."  Id. at 469.  To determine whether a plaintiff has standing to

raise a dormant Commerce Clause challenge, the court must ascertain whether his interest bears

more than a "marginal relationship" to the "purposes underlying the dormant Commerce Clause.

Individuals, 110 F.3d at 702 -703.  A major purpose behind the creation of the Commerce Clause

is to limit "the power of the States to erect barriers against interstate trade."  Id; Dennis v.

Higgins, 498 U.S. 439, 446 (1991).  Here, the complaint alleges that Defendants have acted to

deny Plaintiff the opportunity to grade his road and transport cattle thereon.  Plaintiffs also argue

that they are fuel consumers and would have purchased gas to power tractors and other ranch

vehicles if a grading permit had been granted.  The denial of a grading permit, which led to

Plaintiffs' inability to transport cattle and further consume fuel, are not facts which are related to

the purposes underlying the dormant Commerce Clause.  Therefore, Plaintiffs have not met the

prudential requirements to have standing.   Thus, Plaintiffs do not have standing to present a Commerce Clause challenge.

## 2.  Merits

Even if Plaintiffs had standing, the complaint fails to allege sufficient facts to state a claim for a Commerce Clause violation.  The Commerce Clause specifically grants Congress the power "[t]o regulate Commerce ... among the several States."  U.S. Const. Art. I, § 8, cl. 3.  The "dormant" component of the Commerce Clause prevents states and local governing bodies from impeding the flow of interstate commerce, even absent congressional action in a particular field. Fort Gratiot Sanitary Landfill, Inc. v. Michigan Dep't of Natural Resources, 504 U.S. 353, 359 (1992).   A local ordinance prompts scrutiny under the Commerce Clause in one of two ways: (1) when the Ordinance "affirmatively discriminates," either on its face or in practical effect, against interstate commerce, or (2) when the Ordinance regulates evenhandedly but incidentally burdens interstate commerce.  Hass v. Oregon State Bar, 883 F.2d 1453, 1462 (9th Cir.1989) (citing Maine v. Taylor, 477 U.S. 131, 138 (1986)).   Ordinances falling within the first category are subject to exacting judicial scrutiny and will be upheld only if the governing body demonstrates "both that the statute 'serves a legitimate local purpose,' and that this purpose could not be served as well by available nondiscriminatory means."  Maine v. Taylor, 477 U.S. 131, 138 (1986). Within the context of this first category, "'discrimination' simply means differential treatment of in-state and out-of-state economic interests that benefit the former and burdens the latter." Oregon Waste Sys., Inc. v. Department of Envtl. Quality, 511 U.S. 93, 99 (1994).  If an ordinance discriminates against interstate commerce, it is virtually per se invalid.  C & A Carbone v. Town of Clarkstown, 511 U.S. 383, 392 (1994).  In contrast, ordinances falling

27

within the second category are permissible unless "the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits." <u>Pike v. Bruce Church, Inc.</u>, 397 U.S. 137, 142 (1970).

Unless a municipality denies a permit for the purpose of hurting commerce with another state, its decision concerns a simple matter of local land use.  <u>Kraft General Foods v. Iowa Dep't of Revenue</u>, 505 U.S. 71, 79 (1992); <u>Pacific Northwest Venison Producers v. Smitch</u>, 20 F.3d 1008, 1014 (9th Cir.1994).  The central question is therefore whether the municipality acted with the "primary purpose" of regulating interstate or international commerce, or whether the decision "favors in-state interests over out-of-state interests."  <u>Kleenwell Biohazard Waste and General Ecology Consultants, Inc. v. Nelson</u>, 48 F.3d 391, 395 (9th Cir. 1995).

Plaintiffs' complaint does not suggest that a desire to limit the export/import of cattle or tractor fuel from another state was the "primary purpose" behind, or played a significant role in, Defendant County's decision.  Instead, the complaint alleges that the reason Defendant County denied the permits was out of Defendant Gilbert's personal spite and malice toward Plaintiffs.  Plaintiffs make no allegations that council members discussed or considered the effect their actions would have on commerce.  Significantly, there are no factual assertions that Defendant County's decision had the consequence of preferring in-state interests to out-of-state interests.  Finally, the facts that Plaintiffs do plead in support of Count 4, among them Plaintiff Ernest Merrill's previous residence in Arizona and subsequent move to California, and his plan to raise cattle destined for slaughter and the meat sent out into the general stream of commerce, are not facts that adequately address the standards a plaintiff must meet in order to state a claim for a violation of the Commerce Clause.

Given the foregoing, the court dismisses Count 4 with leave to amend.

**D.    Count 5 Allegations of Violation of the Contracts Clause**

Defendants challenge Count 5 by stating that the contract at issue was not impaired because the grading regulations preexisted any contractual relationship between Plaintiffs and Mr. Schub.  Plaintiffs contend that Defendants' actions have interfered with their ability to fulfill their contractual obligations.  The Contracts Clause states that "no State shall ... pass any ... Law impairing the Obligation of Contracts." U.S. Const, art. I, § 10.

The United States Supreme Court has necessarily interpreted the Contracts Clause beyond the foundational framework contained within the four corners of the Constitution.  The clause's word "State" now applies to not only a state government but to municipality and county governments as well; likewise, the term "Law" extends to state statutes, see Connolly v. Pension Benefit Guaranty Corp., 631 F.Supp. 640, 648 (C.D. Cal. 1984) (citing Textile Workers Pension Fund v. Standard Dye and Finishing Co., Inc, 725 F.2d 843 (2d Cir. 1984)); Indiana ex rel. Anderson v. Brand, 303 U.S. 95, 100 (1938), municipal and county government laws.

> Whilst thus uniformly holding that [a] provision is directed against legislative ... acts, this court, with like uniformity, has regarded it as reaching every form in which the legislative power of a state is exerted, whether it be a constitution, a constitutional amendment, an enactment of the legislature, a by-law or ordinance of a municipal corporation, or a regulation or order of some other instrumentality of the state exercising delegated legislative authority.

Ross v. State of Oregon 227 U.S. 150, 162-163 (1913); see also Cuyahoga River Power Co. v. City of Akron, 240 U.S. 462 (1916).

The Supreme Court has formulated a two-step inquiry for analyzing cases under the Federal Contracts Clause.  First, the law being challenged must actually impair the contract at

29

issue.  Allied Structural Steel Co. v. Spannaus, 438 U.S. 234, 244 (1978), *abrogated on other grounds*.  "Minimal alteration of contractual obligations may end the inquiry at its first stage.  Severe impairment, on the other hand, will push the inquiry to a careful examination of the nature and purpose of the state [action]."  Id. at 245.  Second, after showing such an impairment, the challenger must demonstrate that legitimate governmental interests do not justify the impairment.  Id.

As a threshold matter, it appears that Plaintiffs have pled sufficient facts to meet the expanded definition of the "State" and "Law" terms in the Contracts Clause.  Plaintiffs have alleged that Defendant County, its agents and employees, arbitrarily construed local municipal ordinances and denied grading permits to the ultimate detriment of the Merrill-Schub contract.  Plaintiffs have averred sufficient facts to meet the Supreme Court's two-part test.  In regard to the first "impairment" prong, Plaintiffs allege that the continued denial of a grading permit, which has resulted in Plaintiffs' inability to grade the existing private road, places Plaintiffs in the precarious position of being forced against their will to violate the specific terms of the contract.  In regard to the supplemental "severe impairment" element of the first prong, Plaintiffs further allege that the impairment is compounded by the fact that Mr. Schub is threatening a lawsuit for breach of contract, has hired an attorney, and this retained attorney has contacted Plaintiffs' attorney in reference to the issue.  Finally, in regard to the second "legitimate government interest" prong, the complaint essentially alleges that Madera County Code 14.50.030 requires a grading permit unless Madera County Code 14.50.040 applies.  The complaint further alleges that no grading permit is required, as Plaintiffs fall within the exceptions set forth in County Code 14.50.040.  Therefore, it appears from the facts pled that if

there were a legitimate government interest in the County regulating the grading of a private

road, Defendant would not have precluded itself from such oversight by the specific terms of its

ordinance.

Given the foregoing, the court denies Defendants' motion to dismiss Plaintiffs'

allegation of a violation of the Contracts Clause.

**E.      Count 6 Allegations of Violations of the California Public Records Act**

Defendants allege that Count 6 of Plaintiffs' complaint should be dismissed for want of

subject matter jurisdiction because the allegation arises from an alleged California state law, not

federal law, violation.  Plaintiffs argue that federal courts have supplemental jurisdiction over

cases that are related to the claims falling within the court's original jurisdiction.

The general rule from the United States Code states that a federal district court "shall

have supplemental jurisdiction over all other claims that are so related to claims in the action

within such original jurisdiction that they form part of the same case or controversy"  28 U.S.C. §

1367.  The Ninth Circuit also holds that under 28 U.S.C. § 1367, district courts can attach

dependent claims through the arm of supplemental jurisdiction where the claim involves a

"'common nucleus of operative facts' [that] would ordinarily be expected to be resolved in one

judicial proceeding." In re Pegasus Gold Corp., 394 F.3d 1189, 1195 (9th  Cir. 2005) (quoting

United Mine Workers v. Gibb, 383 U.S. 715, 725 (1966), *superceded by statute.*  To this extent,

Count 6 does include facts that indicate it is tied to Plaintiffs' grievances against Defendants.

However, the code allows a district court to decline to exercise supplemental jurisdiction if:

> (1) the claim raises a novel or complex issue of State law, (2) the
> claim substantially predominates over the claims or claims which
> the district court has original jurisdiction, (3) the district court has

dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). The California Public Records Act requires that any alleged violation be brought before a California Superior Court. Count 6 solely raises issues of state law and no federal case has ever applied the statute. The state courts are a more proper forum to address the interpretation and applicability of the provisions of the Act to the items demanded by Plaintiffs from Defendant County of Madera. Thus, the court declines to exercise supplemental jurisdiction over Count 6 because the claim raises novel issues of state law and there are compelling reasons to deny jurisdiction.

Given the foregoing, the court dismisses Count 6 without prejudice to re-file this claim in state court.

**F.    Municipal Liability**

The court notes that Plaintiffs are bringing suit again the County of Madera as well as named and unnamed defendants. To make a municipality liable under Section 1983, the plaintiff must allege and prove the existence of a policy or custom that has resulted in a constitutional violation. Monnell v. Department of Social Services, 436 U.S. 658, 694-95 (1978). "As a prerequisite to establishing Section 1983 municipal liability," Plaintiffs must establish one of three conditions: (1) a City employee committed an unconstitutional act in question pursuant to (a) a formal City policy or (b) a longstanding practice or custom which constitutes the City's standard operating procedure; (2) the City employee who committed the Constitutional tort was a City official with "final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy;" or (3) an City official with "final policy-

making authority" ratified a subordinate's unconstitutional act, as well as ratifying the basis for the subordinate's unconstitutional act.  Trevino v. Gates, 99 F. 3d 911, 918 (9th Cir. 1996).  If one of these three conditions exists, the plaintiff must also show that the condition was both the actual cause and the proximate cause of the constitutional deprivation alleged.  Trevino, 99 F. 3d at 918.

In analyzing Plaintiffs' complaint, the allegations contained therein do not set out any language which fulfills the test discussed by the Trevino court.  First, there are no facts alleging the existence of a formal Madera County policy or a longstanding practice or custom of violating citizens' constitutional rights when allocating grading permits.  In fact, the opposite is demonstrated in the complaint.  Plaintiffs allege that Defendant County was motivated by the influence of Defendant Gilbert.  The complaint alleges that Defendant County adheres to the regularized "pattern and practice" of automatically renewing grading permits upon payment of the appropriate renewal fee.  Therefore, it appears that the first two-part standard has not been met because Plaintiffs have alleged no policy or practice.

Second, Plaintiffs' complaint only alleges the status of Defendant Gilbert, Defendant Basch, and Defendant Meyers, as "employees" or "agents" of Defendant County.  Plaintiffs do not allege in the complaint that Defendant Gilbert nor any other named defendant falls under the definition of a "final policy-making" authority figure.  Considering the above discussion, Plaintiffs' complaint is inadequate to the extent of naming Madera County as a defendant in this case.

Given the foregoing, the court dismisses Defendant County as a party to this action with leave to amend.

33

**ORDER**

Accordingly, based on the above memorandum opinion IT IS HEREBY

ORDERED that:

1.      Defendants' Rule 12(b) motion is GRANTED in part and DENIED in part;

2.      Plaintiffs' complaint alleging a prior restraint on freedom of speech  is DISMISSED

without leave to amend;

3.      Defendants' motion to dismiss the claim for denial of access to a government building is

DENIED;

4.      Plaintiffs' complaint alleging a violation of substantive due process is DISMISSED with

leave to amend;

5.      Plaintiffs' complaint alleging a violation of the Takings Clause is DISMISSED with leave

to amend;

6.      Defendants' motion to dismiss the claim for a procedural due process violation is

DENIED;

7.      Plaintiffs' complaint alleging a violation of the Commerce Clause is DISMISSED with

leave to amend;

8.      Defendants' motion to dismiss the claim for a Contracts Clause violation is DENIED;

9.      Plaintiffs' complaint alleging a violation of the California Public Records Act is

DISMISSED without leave to amend but without prejudice to being re-filed in state court;

10.     Defendant County is DISMISSED with leave to amend;

and

11.     Plaintiffs may file any amended complaint within thirty (30) days of this order's date of

34

service.   If Plaintiffs fail to file an amended complaint, the court will proceed on the claims that have not been dismissed from the pending complaint.


IT IS SO ORDERED.

**Dated:    August 15, 2005**                              **_/s/ Anthony W. Ishii_**
0m8i78                                                    UNITED STATES DISTRICT JUDGE

35