1
2
3
4
5
6
7
8          IN THE UNITED STATES DISTRICT COURT FOR THE

9              EASTERN DISTRICT OF CALIFORNIA

10
11
12  ERNEST MERRILL and          )    CV F 05-0195  AWI SMS
    LILA MERRILL,               )
13                              )
            Plaintiffs,         )    MEMORANDUM OPINION AND
14                              )    ORDER REGARDING
        v.                      )    DEFENDANTS' MOTION FOR
15                              )    SUMMARY JUDGMENT
                                )
16  COUNTY OF MADERA, et al.,   )
                                )
17          Defendants.         )    (Documents #101, #104, #105, #106,
                                )      #107, #108, #109, & #110)
18  _____   )
                                )
19                              )
    AND RELATED COUNTER CLAIMS  )
20                              )
    _____   )
21

22
23         This action arises from Defendants' citations and denial of several permits to Lila and

24  Ernest Merrill, husband and wife ("Plaintiffs"), and to Ernest Merrill as an individual

25  ("Plaintiff"), which allegedly interfered with Plaintiffs' use of their property.  The court has

26  jurisdiction over the civil rights claims pursuant to 28 U.S.C. § 1331.   Pending before the court

27  is Defendants' motion for summary judgment.

28

# PROCEDURAL HISTORY

On February 11, 2005, Plaintiffs filed a complaint with a demand for a jury trial.   On March 11, 2005, Defendants filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.   On August 17, 2005, the court granted Defendants' motion to dismiss and dismissed the complaint with leave to amend.

On September 9, 2005, Plaintiffs filed an amended complaint.   Count 1 alleges a violation of Plaintiffs' First Amendment rights when Plaintiff was denied access to a government building.    Count 2 alleges a violation of Procedural Due Process.   Count 3 alleges a violation of equal protection because Defendants treated Plaintiffs differently from other similarly situated people to frustrate Plaintiffs' attempts to develop the Dream Catcher Ranch.    Count 4 alleges a violation of the Contract Clause based on the contractual relationship between Plaintiffs and Craig Schub.

On December 1, 2006, Defendants filed a motion for summary judgment.   Defendants contend that Plaintiffs' equal protection claim fails because Plaintiffs cannot show they were treated differently from others who are similarly situated, the evidence does not show Defendants' actions lacked a rational basis, and Plaintiffs cannot show pretext.   Defendants contend that Plaintiffs have not been denied procedural due process because once their permit applications were completed, the permits were approved.   Defendants contend Plaintiffs cannot maintain a First Amendment claim because the right to petition claim does not include obtaining permits on property.  Defendants contend that no genuine issues of fact exist that would justify a trial on the Contracts Clause claim because no legislation is at issue.

On January 2, 2007, Plaintiffs filed an opposition to the motion for summary judgment.

On January 8, 2007, Defendants filed a reply in support of their motion for summary judgment.

# UNDISPUTED FACTS[1]

Plaintiffs own the Dream Catcher Ranch.   This property includes 16 parcels, comprising of 4,000 acres.[2]

Prior to beginning grading of a mobile home pad in 2002, Plaintiffs did not obtain a grading permit from the County for grading.   Plaintiffs offers evidence that this pad had already been graded for some 75 years.

Plaintiffs moved approximately 2,5000 cubic yards of earth as a result of his pad grading activity.[3]   There is a disputed issue of fact on whether the permit Plaintiffs already had, based on

---

[1]  The Undisputed Facts are based on Defendants' proposed undisputed facts and Plaintiffs' responses.   Pursuant to Local Rule 65-260(b) a party opposing a motion for summary judgment shall admit those facts that are undisputed and deny those that are disputed.   Each denial shall include a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission or other document relied upon in support of that denial.   See Local Rule 65-260(b).   As such, those undisputed facts proposed by Defendants will be deemed undisputed unless Plaintiffs have cited to ***evidence*** indicating a dispute.   Responses to undisputed facts are not the place to make argument, and any arguments concerning the facts will be addressed in the discussion section.

Finally, Local Rule 65-260(b) provides a method for Plaintiffs to provide additional material facts.   Local Rule 65-260(b) reads:

> The opposing party may also file a concise "Statement of Disputed Facts," and the source thereof in the record, of all additional material facts as to which there is a genuine issue precluding summary judgment or adjudication.   The opposing party shall be responsible for the filing with the Clerk of all evidentiary documents cited in the opposing papers.

Local Rule 65-260(b).   Plaintiffs have not filed a statement of disputed facts.   As such, the court finds the material facts are set forth in Defendants' proposed undisputed facts and Plaintiffs' responses.

The court notes that in their pleadings, the parties makes reference to evidence not properly before the court in a statement of undisputed or disputed facts.   A party opposing summary judgment must direct the court to specific, triable facts.   Southern California Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003).   It is unfair to the district court, to other litigants, and to the movant to impose a duty on the district court to "search and sift the factual record for the benefit of a" a party failing to meet their burden.   Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1030-31 (9th Cir. 2001).

[2]  Plaintiffs' disputes are overruled as they do not dispute the fact and only offer argument.

[3]  While Plaintiffs dispute this fact, Plaintiffs offer no evidence that their grading did not involve this much earth.   Plaintiffs' statements concerning whether the permit had covered that amount of movement concerns the legal implication of this fact, not its truth.   Legal arguments must be addressed in a discussion section, not along with responses to the proposed statement of undisputed facts.

Duppa Villa's application, included the grading for the mobile home pad or whether this permit did not cover as much property has Plaintiffs had moved.   Compare Nelson Depo. at 51 (mobile home permit will not cover large amount of property being moved); with Gilbert Depo. at 48 (when the county issues permit for single family dwelling building, grading of the pad and driveway are included within the permitting process and a separate grading permit is not required).

Plaintiffs' grading of the mobile home pad was not compacted to the engineering standard of 90%, creating the potential for settlement of structure on the pad.[4]

Prior to beginning grading of a one-mile road segment on the Northeastern parcel of the Dream Catcher Ranch in 2002, Plaintiffs did not obtain a grading permit from the County.

Plaintiffs moved at least 3,000 cubic yards of earth as a result of grading the one-mile segment of road.

Fine Gold Creek and its tributaries traverse the Dream Catcher Ranch.  Fine Gold Creek supports a number of aquatic species that would be adversely affected by sedimentation and erosion runoff.[5]

Plaintiffs' grading of the one-mile road segment failed to adequately control emission and sedimentation.[6]   Plaintiffs provide evidence that the reason why Plaintiffs could not adequately

---

[4]  Plaintiffs evidence does not dispute this fact.   Defendants provide evidence from Jim Bowling regarding the condition of the pad.   There is no evidence that Bowling's report and Graham's red tag were done the same day.

[5]  Plaintiffs' objection that Mr. Hartesveldt's deposition is not properly authenticated is overruled because the parties have now provided the court reporter's certificate.
Plaintiffs' argument that Mr. Hartesveldt did not find protected species nor say what ones would be affected does not dispute the proposed undisputed fact as written.
Plaintiffs' argument that Mr. Hartesveldt was biased does not make the fact disputed. Plaintiff may under the Rules of Civil Procedure and Local Rules provide additional evidence of disputed facts.   Plaintiffs provide evidence that Plaintiff and Mr. Hartesveldt were involved in a dispute.

[6]  Plaintiffs' objection that the supporting deposition is not properly authenticated is overruled because the parties have now provided the court reporter's certificate.

1  grade the road was related to Defendants' failure to give Plaintiffs permits.

2       The manner Plaintiffs had graded the one mile segment of road created a disaster for

3  causing sedimentation of Fine Gold Creek.   While Plaintiffs' dispute this fact, Plaintiffs'

4  evidence does not dispute the statement.   Defendants provide the deposition of Mr. Hartesveldt,

5  who testified:

6       Q.     . . . . Can you tell me the specific problems you saw with association to
        the area of focus as to the habitat?
7       A.     Well, the overwhelming sense that I had of that had happened out there
        was that a lot of earth that had once supported vegetation had been disturbed in
8       such a way that it was all very, very vulnerable to the winter rains.  I thought that
        was the main sense that I had, was that there was a potential disaster.  And I use
9       the word disaster consciously, not intending to overdramatize anything.  A
        potential disaster relating to the erosion of those exposed soil surfaces down into
10      the drainages below that are tributaries ultimately into Finegold Creek.

11  Hartsveldt Depo. at 39-40.     Plaintiffs claim that this testimony is disputed by citing to Dr.

12  Gordus's deposition.   However, Dr. Gordus testified that they had documented four or five sites

13  where there was a large fill on one of the main forks of Finegold Creek.   Gordus Depo. at 56 &

14  59.  Dr. Gordus did not testify that the potential impact on Finegold Creek was not disastrous.

15  Plaintiffs offer no evidence from any expert that the impact was not disastrous.   Thus, this fact is

16  deemed undisputed.[7]

17       The Department of Fish and Game issued a Natural Resources Damage Assessment and

18  prosecuted criminal charges against Plaintiff.   The Central Valley Regional Water Quality

19  Control Board cited Plaintiff for violations of State and Federal statutes concerning disposal of

20  pollutants and fill material into waters of the United States.[8]

21       Plaintiff entered into a plea agreement in 2004, in which Plaintiff pled no-contest.   Part

22

23

24       [7] Plaintiffs' arguments that that only 9/100 of one acre was impacted and that most of the
     sites were minor is simply Plaintiff's attorney argument.   Absent an expert reviewing these facts,
     and concluding they did not create a potential "disaster," Plaintiffs have not disputed the fact.

25

26       [8] The court sustains Plaintiffs' objection to these facts to the extent the proposed facts
     indicate the Department of Fish and Game's and Central Valley Regional Water Quality Control
27   Board's beliefs and thought processes.   The proposed facts have been edited to reflect what these
     agencies did.

28                                                    5

of the agreement included a condition that certain criminal charges were dismissed on the condition that, among other things, Plaintiff obtain County grading permits.

On June 26, 2002, Engineering Technician Thomas Graham conducted an inspection of the Dream Catcher Ranch.   Because Plaintiffs objects to Defendants' proposed summary of Mr. Graham's findings, the court has reviewed Mr. Graham's declaration.   The court finds Mr. Graham's  findings are as follows: (1)  Large amounts of grading in relation to the mobile home pad, for which no permit had been issued, were done in a "very unworkmanlike manner" by simply bulldozing a flat pad, see Graham Dec. at ¶ 4-5; (2) Substantial grading for a one-mile stretch of road, for which no permit had been issued, had removed considerable amounts of vegetation, the road was not engineered, and surfaces and slopes had not been compacted, see Graham Dec. at ¶ 6; (3)  Along the road, there were numerous instances of bulldozed trees that had been pushed down the banks of the slope, see Graham Dec. at ¶ 7; and (4) Along the road, the road crossed natural drainages and water courses, but there was only one instance where a culvert had been placed for drainage or watercourse, see Graham Dec. at ¶ 8.

Mr. Graham placed stop work orders at both entrances of the Dream Catcher Ranch property during his June 26, 2002 inspection.   Plaintiffs provide evidence that a violation notice was placed by the tractor on the mobile home pad.   See Nelson Depo. at 52.   When asked if it was placed on the tractor, Mr. Nelson stated:   "No.  It's a red tag.  And he - - you put it on a post and stick the post down in the ground." [9]

Plaintiffs were aware of the notice placed on the mobile home pad of the Dream Catcher Ranch.

Code Enforcement Officer Manuel Ruiz inspected the Dream Catcher Ranch on June 28, 2002 and saw that work was being done.   The parties dispute what work was being done. Defendants contend Plaintiff had continued his un-permitted grading, citing to Mr. Ruiz who

---

[9]  While Plaintiffs dispute Defendants' fact, Plaintiffs' evidence only shows that a notice was placed on the mobile home pad.   Plaintiffs provide no evidence that no notice was placed at the North entrance.

testified that he "saw that this work had continued.   And there were a couple of men standing there with Plaintiff with shovels.   And there was a caterpillar and the mobile home, open trench with piping."   See Ruiz Depo. at 14-15.   Plaintiff contends he was working on a septic system, and cites his own deposition in which he testified that after the citation was issued, no more grading was done.   See Merrill Depo. at 156-57.   The court finds a disputed issue of fact on what work Plaintiff did between June 26, 2002 and June 28, 2002.

The parties dispute whether Plaintiff continued his grading activities after Mr. Ruiz issued a notice on June 28, 2002.[10]

Along with Permit Coordinator Mark Meyers, Mr. Ruiz made the decision that the only way to secure Plaintiff's compliance was to get an arrest warrant.   This decision was based, in part, on Mr. Meyers telling Mr. Ruiz that Plaintiff was continuing to grade.[11]

Supervisor Gary Gilbert had no contact with and gave no direction to Mr. Graham, Mr. Ruiz, or Mr. Meyers.   While Plaintiffs claim to dispute this fact, Plaintiffs have not offered sufficient evidence to dispute Defendants' evidence on this fact.   Defendants cite to the depositions of Mr. Ruiz and Mr. Meyers and the declaration of Mr. Graham, in which they stated they did not discuss this case with Mr. Gilbert.   See Ruiz Depo. at 10; Meyers Depo. at 58-59; Graham Dec. at ¶ 12.   Defendants also cite to the deposition of Mr Gilbert, in which he states that in 2002 he did not talk to or request Mr. Meyers, Mr. Ruiz, or Mr. Graham tell Plaintiff he needed permits, deny Plaintiff permits, or prepare the arrest warrant.   See Gilbert Depo. at 19-20, 23, 29.   While not offering direct evidence that Mr. Gilbert gave direction to the other Defendants, Plaintiffs offer the deposition of Mr. Pool, a criminal investigator for the Madera District Attorney's Office.   Mr. Pool testified about a meeting he had with District Attorney LiCalsi and Mr. Gilbert in 2002 regarding Plaintiff.   Based on this evidence, Plaintiffs appear to contend an inference can be drawn that District Attorney LiCalsi, or someone on his behalf, did

---

[10]  Defendants cite no admissible evidence that Plaintiff did continue working.

[11]  The court has modified this fact to better reflect the cited deposition testimony.

give directions to Mr. Graham, Mr. Ruiz, or Mr. Meyers pursuant to Mr. Gilbert's request. However, On December 7, 2006, Defendants filed a document signed by Mr. Pool amending his deposition.   On this Errata Sheet, signed on November 24, 2006, Mr. Pool states that after reviewing his transcript, it occurs to him that he "confused the Merrill issue with a separate unrelated issue which Mr. Gilbert discussed in my presence."   See Supp. Cole Dec. Exhibits. Mr. Pool states that the meeting he attended with Mr. Gilbert did not pertain to Plaintiff.   See id Because Mr. Pool has amended his testimony to state that he had no discussion with Mr. Gilbert about Plaintiff, the court finds Plaintiffs have failed to provide sufficient evidence to create a circumstantial inference that Mr. Gilbert influenced Mr. Graham's, Mr. Ruiz's, and/or Mr. Meyers' actions.  Thus, Defendants' proposed fact is deemed undisputed.

After the Agreement between Plaintiff and the Department of Fish and Game was reached, Angela M. Basch, County Code Enforcement Officer, informed Plaintiff by letter several times that the Plaintiff needed to submit a complete set of grading plans.[12]

Plaintiff sent a letter to the County's risk manager in September 2004 requesting an administrative hearing.[13]

Shortly after Plaintiffs' engineer submitted a complete set of grading plans for "Site 2" in April 2005, the County issued a grading permit for that stretch of road.[14]

Plaintiffs' road engineer, Greg Merrill, did not experience any delays or problems in

[12]  This statement has been changed to better reflect Ms. Basch's declaration and the attached exhibits in light of Plaintiffs' objection.  Plaintiffs' additional objections and citations to Ms. Basch's deposition do not dispute the proposed fact.

[13]  Defendants offer as undisputed facts that prior to making this request and prior to the lawsuit by Craig Schub in April 2005, Plaintiffs did not submit a complete set of grading plans. These proposed undisputed facts are not included because the cited evidence only concerns when Mr. Schub saw grading plans, and it does not provide any evidence on when Plaintiffs submitted the plans to the County.

[14]  Plaintiffs dispute this fact by citing to Plaintiff's deposition testimony that it took almost one year after the permit was revoked until it was reinstated on the Schub property.   See Merrill Depo. at 138-39.   However, this testimony does not dispute that a permit was issued shortly after a complete set of grading plans were submitted.

1   processing multiple grading permit applications on behalf of Plaintiff.[15]

2        Plaintiffs' mobile home pad engineer, Jim Bowling, likewise experienced no delays or

3   difficulties in obtaining approval of a grading permit for Plaintiffs.

4        Plaintiffs submitted a complete grading application for Site 2 on April 22, 2005.[16]

5        The County had earlier issued a grading permit for Site 2 in April 2003.   The parties

6   dispute whether Plaintiffs let this permit lapse or whether Ms. Basch revoked the permit.

7   Plaintiffs offer evidence that Ms. Basch cancelled this permit because Plaintiffs did not own the

8   property.

9        Mr. Schub sued Plaintiffs for a number of reasons, including Plaintiffs' failure to

10  complete grading of Site 2 in a timely and workmanlike manner.    Plaintiffs and Mr. Schub have

11  settled their lawsuit.   The settlement did not require Plaintiffs to compensate Schub.

12                          **LEGAL STANDARD**

13       Summary judgment is appropriate when it is demonstrated that there exists no genuine

14  issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

15  Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Poller v.

16  Columbia Broadcast System, 368 U.S. 464, 467 (1962); Jung v. FMC Corp., 755 F.2d 708, 710

17  (9th Cir. 1985).

18              Under summary judgment practice, the moving party
                [A]lways bears the initial responsibility of informing the district
19              court of the basis for its motion, and identifying those portions of
                "the pleadings, depositions, answers to interrogatories, and
20              admissions on file, together with the affidavits, if any," which it
                believes demonstrate the absence of a genuine issue of material
21              fact.

22

23       [15] While Plaintiffs dispute this fact, the cited testimony from Mr. Greg Merrill's
    deposition does not concern Mr. Greg Merrill processing grading permit applications.

24
         [16] Plaintiffs' objection to this evidence is overruled.   Mr. Ctibor has declared that
25  Exhibit 17 is an accurate copy of the Plans submitted to him.   The Plans are dated April 22,
    2005.
26       To the extent Defendants claim this happened three days after Mr. Schub sued Plaintiff,
    this fact has been omitted because Defendants cite to no evidence on when Mr. Schub sued
27  Plaintiff.

28                                      9

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los Angeles, 607 F.2d 1276, 1280 (9th Cir. 1979).   In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the mere allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Anderson, 477 U.S. 248-49; Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

10

1    In the endeavor to establish the existence of a factual dispute, the opposing party need not

2    establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

3    dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

4    trial."  First Nat'l Bank, 391 U.S. at 290; T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose

5    of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether

6    there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)

7    advisory committee's note on 1963 amendments); International Union of Bricklayers v. Martin

8    Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

9    In resolving the summary judgment motion, the court examines the pleadings,

10   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

11   any.  Rule 56(c); Poller, 368 U.S. at 468; SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th

12   Cir. 1982).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and

13   all reasonable inferences that may be drawn from the facts placed before the court must be drawn

14   in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc.,

15   369 U.S. 654, 655 (1962)(per curiam); Abramson v. University of Hawaii, 594 F.2d 202, 208 (9th

16   Cir. 1979).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

17   obligation to produce a factual predicate from which the inference may be drawn.  Richards v.

18   Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th

19   Cir. 1987).

20                                              **DISCUSSION**

21   **A.  Equal Protection**

22   The complaint alleges an equal protection violation.   In the opposition, Plaintiffs contend

23   that the following events were each a violation of Plaintiffs' equal protection rights:  (1)

24   Defendants cited Plaintiffs and required them to have a permit to grade a driveway despite the

25   permit for the mobile home, but Mr. Gilbert was allowed to grade his driveway under his house

26   permit and did not need another grading permit; (2)  Defendants issued a stop work notice for

27

28                                                   11

Plaintiffs' private road maintenance when the ordinance is unclear and provides unfettered discretion, but the Flying O Ranch was allowed to grade its roads without a permit; (3) Defendant Ruiz cited Plaintiffs two days after notice of violations even though others were given 15 days to remedy violations; (4) Plaintiffs were cited for grading without a permit when no one else has ever been cited; (5) Defendants sought an arrest warrant for Plaintiff when no one else has ever been arrested for the same thing and no one saw Plaintiff actually grading after the red-tag; (6) Ambushing and arresting Plaintiff at a meeting set up with the district attorney to discuss the permits; (7) By arresting Plaintiff, Plaintiff was treated differently than Defendant Gilbert who applied for a permit on July 9, 2002 and was given one on July 10, 2002; (8) Requiring Plaintiffs to massively improve roads that were not for public access was not reasonably related to a government interest; (9) Not allowing Plaintiffs to winterize his road without justification was disparate treatment; (10) There was no rational basis for failing to comply with Defendants' own procedure to return Plaintiffs' erosion bond; (11) Defendants' revoking Plaintiffs' permit to grade the Schub property was without any rational basis; (12) Defendants refusing Plaintiff access to the building to apply for a permit without a rational basis and with animus; (13) The failure to give a permit to grade the Schub property violated Plaintiffs' equal protection rights and takes Plaintiffs out of the class of one theory because it also treated Craig Schub the same; and (14) Defendant Basch's canceling of the informal meeting to discuss the permit and the Board of Supervisors' failure to provide a hearing were actions that were not rationally related to a legitimate government interest and done for a bad motive.

The Supreme Court has held that the equal protection clause means "that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 439 (1985); Clark v. California, 123 F.3d 1267, 1270 (9th Cir. 1997). The "purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the state's jurisdiction against intentional and arbitrary discrimination,

1  whether occasioned by express terms of a statute or by its improper execution through duly

2  constituted agents." Sioux City Bridge Co. v. Dakota County, Neb., 260 U.S. 441, 445 (1923).

3  The Equal Protection Clause is intended to protect every person within a state's jurisdiction

4  "against intentional and arbitrary discrimination, whether occasioned by express terms of a

5  statute or by its improper execution through duly constituted agents." Village of Willowbrook v.

6  Olech, 528 U.S. 562, 564 (2000) (per curiam) (citations omitted).

7      Where state action does not implicate a fundamental right or a suspect classification, the

8  Plaintiff can establish a "class of one" equal protection claim.   Squaw Valley Development Co.

9  v. Goldberg,  375 F.3d 936, 944 (9th Cir. 2004).  "A successful equal protection claim may be

10 brought by a class of one, when the plaintiff alleges that it has been intentionally treated

11 differently from others similarly situated and that there is no rational basis for the difference in

12 treatment." Seariver Mar. Fin. Holdings Inc. v. Mineta, 309 F.3d 662, 679 (9th Cir.2002) (citing

13 Olech, 528 U.S. at 564).   To show an equal protection violation under the class of one theory, a

14 plaintiff must prove that:  (1) Others similarly situated were treated different; (2) Defendant's

15 action were without a rational basis; and (3) If there is a stated rational basis for the unequal

16 treatment, the defendant's proffered basis is pretext.   Squaw Valley, 375 F.3d 944-948.

17 Disparate government treatment for an equal protection claim based on a class of one "will

18 survive rational basis scrutiny 'as long as it bears a rational relation to a legitimate state

19 interest.'" Id. at 944 (quoting Patel v. Penman, 103 F.3d 868, 875 (9th Cir.1996).   Selective

20 enforcement of valid laws does not make a defendant's action without a rational basis, but "there

21 is no rational basis for state action that is malicious, irrational or plainly arbitrary."  Squaw

22 Valley, 375 F.3d 944 (quotes omitted).  A plaintiff may pursue an equal protection claim by

23 showing that the defendant's asserted rational basis was merely a pretext for  malignant

24 animosity.   Id. at 936, 944-45, 948.

25      For example, in Olech, a property owner alleged that the city violated her equal protection

26 rights when it demanded a 33-foot easement as a condition of connecting her property to the

27

28                                          13

municipal water supply but only required only a 15-foot easement from other similarly situated property owners. Olech, 528 U.S. at 565. The plaintiff asserted that the city's discriminatory behavior was irrational and wholly arbitrary and motivated by ill will. The district court dismissed the lawsuit for failure to state a cognizable claim, but the Court of Appeals for the Seventh Circuit reversed and the Supreme Court affirmed. The Supreme Court held that the Equal Protection Clause does protect a cause of action on behalf of a "class of one," where the plaintiff does not allege membership in a class or group, but alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. Id. at 56-64. In addition, the Supreme Court noted the plaintiff had also alleged the defendant's demand was irrational and wholly arbitrary and her property was connected after receiving a clearly adequate 15-foot easement. Id. at 565. The Supreme Court concluded that "[T]hese allegations, quite apart from the Village's subjective motivation, are sufficient to state a claim for relief under traditional equal protection analysis. Id.

In Squaw Valley Development Co. v. Goldberg, 375 F.3d 936 (9th Cir. 2004), the plaintiff filed an action under 42 U.S.C. § 1983, alleging that two employees of the California Regional Water Quality Control Board, Lahontan Region had subjected them to selective and over-zealous regulatory oversight concerning the application of the Basin Plan and Waste Discharge Requirements, which set forth water quality standards for the surface and groundwater of the Lahontan Region and allowances for the discharge of surface flows generated within the facility. Id. at 938-39. On review, the Ninth Circuit stated that when "state action does not implicate a fundamental right or a suspect classification, the plaintiff can establish a 'class of one' equal protection claim by demonstrating that it 'has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Id. at 944 (quoting Olech, 528 U.S. at 564). The Ninth Circuit found that if an equal protection challenge is based on enforcement of valid laws, a plaintiff must show that the defendant's rational basis for selectively enforcing the law is a pretext for an impermissible motive. Id. at

1  944.

2  **1. Different Treatment**

3    Defendants contend that Plaintiffs cannot show that Defendants treated others similarly

4  situated to Plaintiffs differently.   As discussed above, Plaintiffs must show that individuals

5  similarly situated to Plaintiffs were treated differently by Defendants.  See Squaw Valley, 375

6  F.3d 944-948.   Defendants provide evidence that no one similarly situated to Plaintiffs has been

7  treated differently because there is no one similarly situated to Plaintiffs.    In response, Plaintiffs

8  argue that Defendants' standard to find a similarly situated person or landowner is too high

9  because it would be impossible to find someone else with the exact same acreage of land who

10  wanted to do the exact same things on their land as Plaintiffs.

11    A defendant can meet its burden on summary judgment by showing that there is an

12  absence of evidence to support the nonmoving party's case; i.e. that the plaintiff does not have

13  evidence from which a jury could find an essential element of the opposing party's claim.

14  Celotex, 477 U.S. at 322;  Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d

15  1099, 1102 & 1106 (9th Cir. 2000).    If a moving party carries its burden of production, the

16  nonmoving party must produce evidence to support its claim or defense. Id. at 1102; Cline v.

17  Industrial Maintenance Eng'g. & Contracting Co., 200 F.3d 1223, 1229 (9th Cir.2000).   If the

18  nonmoving party fails to produce enough evidence to make a showing sufficient to establish the

19  existence of an element essential to that party's case, the moving party wins the motion for

20  summary judgment.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Nissan Fire & Marines

21  Ins., 210 F.3d at 1102.

22    ***a.  Theories (6), (8), (9), (10), (11), (12), (13), & (13)***

23    In the opposition, Plaintiffs list several basis for their equal protection claim. However, in

24  the opposition, Plaintiffs do not allege, let alone provide evidence, that anyone else was treated

25  differently than Plaintiffs on many of these theories.   While Plaintiffs do allege Defendants'

26  actions were not rationally related to a legitimate government function and Defendants' motive

27

28                                       15

was improper, Plaintiffs do not allege or provide evidence anyone else was treated differently. As such, Plaintiffs cannot maintain an equal protection claim on the following theories, as numbered above:  (6) Ambushing and arresting Plaintiff at a meeting set up with the district attorney to discuss the permits; (8) Requiring Plaintiffs to massively improve roads that were not for public access; (9) Not allowing Plaintiffs to winterize their road; (10) Failing to comply with Defendants' own procedures to return Plaintiffs' erosion bond; (11) Revoking Plaintiffs' permit to grade the Schub property; (12) Refusing Plaintiff access to the building to apply for a permit; (13) Failing to give Plaintiffs a permit to grade the Schub property; and (14) Defendant Basch's cancelling of the informal hearing to discuss the permit and the Board of Supervisors' failure to provide a hearing.   While Plaintiffs have alleged that each one of these acts were done without a rational basis and done based on Defendants' bad motive, Plaintiffs have not alleged or provided evidence that others similarly situated were not given the same treatment.   Thus, Defendants are entitled to summary judgment on these theories.

### *b.  Theory (1)*

Defendants also appear to contend that they are entitled to summary judgment on theory one because there is no one else similarly situated.  Theory one alleges Defendants cited Plaintiffs and required them to have a permit to grade a driveway despite his permit for the mobile home, but Mr. Gilbert was allowed to grade his driveway under his house permit and did not need another grading permit.   Defendants contend that Mr. Gilbert is not similarly situated to Plaintiff because Mr. Gilbert only graded a driveway, not an entire road.   The court cannot find that there is no disputed issue of material fact on whether Mr. Gilbert was similarly situated to Plaintiff based on the evidence currently provided to the court.

Plaintiffs claim that at issue in this theory is only the grading of his 300 foot driveway, which apparently is shorter than Defendant Gilbert's driveway.   Defendants contend at issue is the grading of a six mile road, not merely a driveway.    Plaintiffs maintain this theory only concerns the 300 foot driveway.    It is unclear if Plaintiffs are only raising Defendants' conduct

1  pertaining to the driveway, and not the road, or if Plaintiffs and Defendants are discussing the

2  same thing and merely using different terms.

3      The burden on this motion is on Defendants to show that Defendant Gilbert's driveway

4  was not similarly situated to the driveway Plaintiffs was cited for grading.[17]  Defendants have

5  failed in this burden.   Thus, there is a disputed issue of fact on whether Plaintiffs were similarly

6  situated to others under the first theory of their equal protection claim, which is based on

7  Defendants citing Plaintiffs and requiring them to have a permit to grade a driveway despite the

8  permit for the mobile home.

9      ***c.  Theory (2)***

10      Concerning theory two, Defendants placing of stop work notices on the roads because

11  Plaintiff was grading without a permit, Plaintiffs contend that the Flying O Ranch was allowed to

12  grade its roads without a permit.   Plaintiffs provide evidence regarding the Flying O Ranch,

13  which is an approximate 1400 acre development located in the North Fork and Coarsegold areas

14  of Madera County.  See Cotter Dec.   This property was divided up into parcels and sold to

15  individual owners.   No records of grading permits exist.   See id.   Plaintiffs' evidence indicates

16  that in 1989 or 1990, when the development was started, the county did not issue grading

17  permits.  Plaintiffs' evidence also indicates that the Board of Supervisors may have issued a

18  variance for this property.   See id.[18]

19      The court finds that Plaintiffs have failed to submit sufficient evidence to create a

20  disputed issue of fact on whether the Flying O Ranch is similarly situated to Plaintiffs.   The only

21  evidence before the court indicates that the roads on the Flying O Ranch were graded without a

22  permit in 1989 or 1990.   There is no evidence on what Madera County ordinances were in place

23

24      [17]  It is possible Plaintiffs were cited only for grading the road, and not the 300 foot
    driveway, and as such, there is no basis to Plaintiffs' theory of recovery.  However, from the
25  evidence before the court, it is unclear if Plaintiffs' citation pertained to the 300 foot driveway.

26      [18]  While the court agrees with Defendants that much of Plaintiffs' evidence concerning
    the Flying O Ranch is hearsay, even considering this evidence, Plaintiffs have not created a
27  disputed issue of material fact.

28                                             17

1  during this time.   There is no evidence a grading permit would have been required for these

2  roads, and the only evidence before the court implies that grading permits were not required

3  during this time frame.   Further, as discussed in further detail below, grading permits are only

4  necessary under certain circumstances, such as grading or moving of earth that will change or

5  obstruct drainage channels or change water flow, involve placing of fill or obstructions in a

6  drainage ditches, or placing of fill or excavated material in a manner that would become subject

7  to excessive erosion.   See Madera County Code § 14.50.030.  However unlikely that it did not,

8  there is no evidence that the grading done on the Flying O Ranch obstructed drainage channels or

9  ditches.   There is also no evidence that it could have caused erosion.   Plaintiffs have simply

10 failed to come forward with evidence that the Flying O Ranch was similarly situated to Plaintiffs.

11  There is no evidence the same County Code provisions applied to the Flying O Ranch when the

12 roads on it were graded or that the grading at issue required a permit under the County Code.

13 Thus, Plaintiffs have failed to create a disputed issue of material fact on Plaintiffs' second theory

14 of an equal protection violation, based on Defendants' citation and requirement of permits to

15 grade the roads.   Defendants are entitled to summary judgment on this theory.

16      ***d.  Theories (3) & (4)***

17      Plaintiffs contend that there is a disputed issue of fact on whether Plaintiffs were treated

18 differently on his third and four theories of equal protection violations.   Theory three alleges

19 Defendant Ruiz cited Plaintiff two days after notice even though others were given 15 days to

20 remedy violations and theory four alleges Plaintiff was cited for grading without a permit when

21 no one else has ever been cited.   On these theories, Plaintiffs cite to Defendant Ruiz's own

22 admission that when he, rather than the engineering department, issued a warning, Defendant

23 Ruiz issued a 15-Day Notice Violation.   See Ruiz Depo. at 22.   Defendant Ruiz also testified

24 that he had never issued a citation to anyone else for specific grading violations before citing

25 Plaintiff.   See Ruiz Depo. at 18.   The court agrees that Defendant Ruiz's deposition creates a

26 disputed issue of material fact on whether Plaintiffs were treated differently by being cited after

27

28                                      18

two days when others were given 15 days.   Defendant Ruiz's deposition clearly implies that

others had committed similar violations but they were given 15 days to cure defects.   Defendants

have failed to provide evidence that the "others" implied to by Defendant Ruiz's deposition were

really not similarly situated to Plaintiffs.   Thus, the court finds a disputed issue of material fact

on Plaintiffs' third theory, alleging Plaintiff was cited after two days when others were given 15

days after notice to cure their defects.

Similarly, the evidence currently before the court creates a disputed issue of fact on

Plaintiffs' fourth theory, alleging Plaintiff was the only one cited for grading violations.

Defendant Ruiz's deposition implies others committed grading violations, but they were given 15

days to cure the defect after the notice rather than being cited after only two days.

Thus, there is a disputed issue of fact on whether Plaintiffs were similarly situated to

others under his third and four theories of  equal protection violations, which allege Plaintiffs

were not given a 15 day period between notice and being cited and, as such, the only one ever

cited for grading violations.

### *e.  Theory (5)*

Plaintiffs allege that they were treated differently than others on his fifth theory.   Theory

five alleges Defendants violated Plaintiffs' equal protection rights by seeking an arrest warrant

for Plaintiff when no one else had ever been arrested for grading violations.   The problem with

this theory is that Plaintiffs have failed to create a disputed issue of material fact that others were

not arrested for doing the same actions as Plaintiffs.   Plaintiffs cite to Defendant Ruiz's

deposition, in which he states he is not aware of anyone other than Plaintiff being arrested for

non-compliance with a Notice of Stop Work order.   See Ruiz Depo. at 38.   Mere evidence that

Plaintiff is the only one who has ever been arrested for non compliance with a Notice of Stop

Work order does not show that others also allegedly violated Notice of Stop Work orders and

were not arrested.   Mr. Ruiz testified that he did not issue stop work orders, and he gave 15-Day

Notice of Violations instead.   There is no implication in Defendant Ruiz's deposition that others

who were given Notice of Stop Work orders for grading violations were not later arrested. Thus,  Plaintiffs have failed to create a disputed issue of material fact on whether Plaintiffs' fifth theory of an equal protection violation, based on Plaintiff's arrest.  Defendants are entitled to summary judgment on this theory.

### f.  Theory (7)

Plaintiffs' seventh theory alleges that by arresting Plaintiff, Plaintiff was treated differently than Defendant Gilbert who applied for a permit on July 9, 2002 and was given one on July 10, 2002.   Plaintiffs have not shown that Defendant Gilbert was similarly situated to Plaintiffs.   There is no showing that Defendant Gilbert was given a stop work notice.   Because Plaintiff was arrested for allegedly not stopping work once he had been given the stop work notice, to show another person was similarly situated, Plaintiffs would have to show these other people also received a stop work notice but were not arrested.   Merely providing evidence and argument that Defendant Gilbert also needed a grading permit and was given one once he applied is insufficient to show that Defendant Gilbert is similarly situated to Plaintiffs.   Thus, Plaintiffs have failed to create a disputed issue of material fact on whether Plaintiffs' seventh theory of an equal protection violation, based on Plaintiff being arrested when Defendant Gilbert was given a permit in one day.   Defendants are entitled to summary judgment on this theory.

### g.  Remaining Theories

In conclusion, the court finds that there is a disputed issue of material fact on whether Plaintiffs were similarly situated to others under their first theory of an equal protection violation, which is based on Defendants citing Plaintiffs and requiring them to have a permit to grade a 300 foot driveway despite the permit for the mobile home.  The court also finds there is a disputed issue of material fact on whether Plaintiffs were similarly situated to others under the third and four theories of equal protection violations, which allege Plaintiff was not given a 15 day period between the notice and being cited and, as such, he was the only one ever cited for grading violations.   All of Plaintiffs' other theories fail for lack of a similarly situated person.

**2. Rational Basis**

On the remaining theories, Defendants contend that they had a rational basis for their actions because they were merely enforcing the County Code.   Plaintiffs contend that Defendants had no rational basis because Plaintiff had not violated the County Code and Defendants' alleged code enforcement actions were pretext.

### *a.  Theory (1)*

The first theory is based on Defendants citing Plaintiffs and requiring them to have a permit to grade a driveway despite the permit for the mobile home.  The court finds a disputed issue of fact on whether Defendants have a rational basis for their actions.   In dispute is whether Plaintiffs' grading of the 300 foot driveway violated the County Code.   Defendants' position appears to be that the 300 foot driveway was part of the six mile road, that required a permit.   Plaintiffs' position is that the 300 foot driveway did not require a permit because it was covered under the permit for the mobile home and pad.   Defendants have failed to provide evidence that if Plaintiffs were cited for the 300 foot driveway, Plaintiffs did in fact need a permit to grade this driveway.[19]  Thus, the court finds that there remains a disputed issue of fact on whether Defendants had any rational basis to cite Plaintiffs for grading the 300 foot driveway without a permit.

### *b.  Theories (3) & (4) Based on Grading the 300 Foot Driveway*

Similarly, the court finds that there is a disputed issue of fact on whether Defendants had a rational basis under Plaintiffs' third and four theories of  equal protection violations, which allege Plaintiff was not given a 15 day period between the notice and being cited and, as such, he was only one ever cited for grading violations.   Presuming this theory only concerns the 300 foot driveway, there is a disputed issue of fact on whether Plaintiffs even violated the County Code.   Thus, to the extent theories three and four concern citing Plaintiffs for grading the 300 foot

---

[19]  Again, the court notes there is confusion over exactly what Plaintiffs were cited for grading and whether this theory includes the citation on the entire road or just the citation pertaining to a 300 foot driveway.

driveway, as opposed to the road, there is a disputed issue of fact on whether Defendants had any rational basis for their actions.

### *c.  Theories (3) & (4) Based on Grading the Road*

It is possible that theories three and four also concern Plaintiffs' grading of the road and Defendants citing Plaintiff when others were given 15 days to cure their violation and no one else was cited.   If this theory includes the citation for grading the road, the parties dispute whether the County Code required a permit to maintain a private use road.   As discussed in more detail below, grading permits are necessary when grading or moving of earth will change or obstruct drainage channels or change water flow, grading will place fill or obstructions in a drainage ditches, and grading will remove fill or excavate material in a manner that would become subject to excessive erosion.  See  Madera County Code § 14.50.030.   The undisputed facts reveal that Plaintiffs' grading of the road failed to adequately control emission and sedimentation and the manner Plaintiffs had graded the one-mile segment of road created a disaster for causing sedimentation of Fine Gold Creek.  Plaintiffs' grading included removing considerable amounts of vegetation, not compacting surfaces and slopes, bulldozing trees and pushing down the slope, and disrupting natural drainages and water courses. The undisputed facts show that the grading done impacted drainage, and as such, required a permit under the County Code.

Because the undisputed facts reveal that Defendants were enforcing the County Code when they cited Plaintiffs for grading the road without a permit, the inquiry is whether there is also a disputed issue of fact on whether Defendants' proffered reason for the citation – enforcement of the County Code – is pretext for another issue.  Accordingly, Defendants are only entitled to summary judgment on this theory if there is not a disputed issue of material fact on whether Defendants' actions were pretext.

### 3.  Pretext

In cases where the defendant has a stated rational basis for unequal treatment, a plaintiff can succeed on an equal protection claim if the defendant's proffered basis is pretext.  Squaw

1   Valley, 375 F.3d 944-948.   Selective enforcement of valid laws does not make a defendant's

2   action without a rational basis, but "there is no rational basis for state action that is malicious,

3   irrational or plainly arbitrary."   Squaw Valley, 375 F.3d 944 (quotes omitted).   The plaintiff

4   must show that the defendant's asserted rational basis was merely a pretext for malignant

5   animosity.   Id. at 936, 944-45, 948.

6          Plaintiffs allege that Defendant intentionally enforced the County Code against them

7   because Defendant Gilbert and his wife were unhappy about Plaintiffs' development of the

8   property.   The only remaining theories for which Plaintiffs have created a disputed issue of

9   material fact on whether there were others similarly situated and Defendants have provided

10  evidence of a rational basis – i.e. Defendants were just enforcing their code – is Plaintiffs'

11  grading of the road and Defendants citing Plaintiffs when others were given 15 days to cure their

12  violation after notice, and as such, Plaintiffs are the only one to be cited for grading violations.

13         The court has carefully reviewed Plaintiffs' opposition to obtain Plaintiffs' evidence of

14  pretext.   While Plaintiffs admit that there is no evidence Mrs. Gilbert complained to her

15  husband, Defendant Gilbert, and Defendant Gilbert caused Defendants' to cite Plaintiffs,

16  Plaintiffs claims there is circumstantial evidence of Defendant Gilbert's involvement.   The court

17  disagrees.   As discussed in the undisputed facts above, because Mr. Pool has edited his

18  deposition, there is no evidence Defendant Gilbert ever requested help from the District

19  Attorney's Office.    In addition, Mr. Meyers statement that he discussed Plaintiff with

20  Defendant Gilbert sometime between 2000 and 2006, alone, is insufficient to show pretext for

21  actions taken in 2002.   Mr. Cotter's testimony that Mr. Ruiz admitted the County had received a

22  call about Plaintiff from a prominent citizen is hearsay, and there is no indication the call

23  occurred prior to the citations on June 28, 2002.

24         In addition, the court cannot find the totality of Defendants' conduct is sufficient to create

25  a disputed issue of fact on Defendants' malignant animosity.    The fact Plaintiffs were given a

26  stop work notice while others were given a 15 notice appears to be explained by the fact

27

28                                                    23

Plaintiffs' stop work notice was given by the Engineering Department and Mr. Ruiz was not the first one to give notice of violations to Plaintiffs.   Defendants' later actions pertaining to the permits may provide some circumstantial evidence that Defendants grew frustrated with Plaintiffs.   However, this evidence all occurred after the citations were issued.   Plaintiffs have failed to provide evidence to create a disputed issue of material fact on whether there was an animus for Defendant's actions toward Plaintiffs on June 28, 2002, when the event underlying this theory occurred.   As such, summary judgment on this theory is appropriate.

**B.  Procedural Due Process**

In the complaint and opposition, Plaintiffs contend several actions by Defendants violated Plaintiffs' procedural due process rights.   In the opposition, Plaintiffs cite to several alleged due process violations: (1) Denial of a permit to build a barn; (2) Requiring Plaintiffs to obtain a grading permit for the road when none was required under the ordinances; (3) Citing Plaintiffs for grading without a permit without giving Plaintiffs 15 days to remedy the situation; (4) Arresting Plaintiff for grading without giving Plaintiff 15 days to remedy the situation; (5) Not releasing Plaintiff's erosion bond; (6) Cancelling or revoking Plaintiffs' renewal permit to grade Site 2 (the Schub property); (7) Refusing Plaintiff access to building so that Plaintiff could apply for a new permit to grade the Schub property; (8) Refusing to meet informally with Plaintiff to get the permit reinstated on the Schub property; (9) Refusing to provide Plaintiff with a hearing before the Board of Supervisors about the permit on the Schub property; and (10) Denial of permits to build a home.

In their motion, Defendants address Plaintiffs' contentions that Defendants denied grading permits and denied him an administrative hearing to renew his grading permit for the Schub property.   Defendants contend that Plaintiffs failed to submit a grading application prior to requesting a hearing, including a complete set of grading plans.   Defendants contend that when Plaintiffs submitted a complete application, along with plans, Defendants promptly issued a permit.

1    Due process requires "an opportunity for some kind of hearing prior to the deprivation of

2    a significant property interest." Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 19

3    (1978). Before a property interest can be taken, the owner of the interest is entitled to notice and

4    a hearing "at a meaningful time and in a meaningful manner." Armstrong v. Manzo, 380 U.S.

5    545, 552 (1965). The notice must be sufficient to enable the plaintiff to prepare for the hearing

6    in a meaningful way. See Memphis Light, 436 U.S. at 14. "Precisely what procedures the Due

7    Process Clause requires in any given case is a function of context." Brewster v. Board of Educ. of

8    the Lynwood Unified School Dist., 149 F.3d 971, 983 (9th Cir. 1998). What procedures satisfy

9    due process in a given case are determined by the three-part balancing test of Mathews v.

10   Eldridge, 424 U.S. 319 (1979). See Brewster, 149 F.3d at 983. Mathews requires the court to

11   consider:

12        First, the private interest that will be affected by the official action; second, the
          risk of an erroneous deprivation of such interest through the procedures used, and
13        the probable value, if any, of additional or substitute procedural safeguards; and
          finally, the Government's interest, including the function involved and the fiscal
14        and administrative burdens that the additional or substitute procedural
          requirement would entail.
15

16   Mathews, 424 U.S. at 335. Mere negligence does not deprive an individual of a property interest

17   under the Fourteenth Amendment, requiring procedural due process protection. See Daniels v.

18   Williams, 474 U.S. 327, 330-31 (1984).

19        Defendants contend that they have offered evidence that Plaintiffs needed to submit

20   grading plans, and once they submitted them, they were given the grading permits.  Madera

21   County Code § 14.50.030 requires, among other things, a permit before:  leveling, grading or

22   moving of earth that will change or obstruct drainage channels or change water flow, placing of

23   fill or obstructions in a drainage ditch, or the placing of fill or excavated material in a manner

24   that would become subject to excessive erosion. Madera County Code § 14.50.040 allows for

25   certain exceptions to this permit requirement, including site grading, driveways, and other work

26   authorized by a valid building permit. Madera County Code § 14.50.050 provides the process to

27

28                                                25

1    obtain a permit, including providing a description of the work to be done, a description of the

2    pattern and location of drainage, culverts, and natural watercourses, and an erosion and sediment

3    control plan.   Madera County Code § 14.50.060 requires the county engineer or county officials

4    to review applications to ensure that the proposed work is not detrimental to the public health,

5    safety or welfare and allows the county engineer and road commission to require an applicant to

6    furnish additional information as is reasonably necessary to review the application.   Madera

7    County Code § 14.50.080 sets forth the requirements for drainage and erosion control.   Madera

8    County Code § 14.50.090 allows for an appeal to the board of supervisors by an applicant if the

9    applicant has been denied or disagrees with conditions or for an appeal by any person affected by

10   the grant of a permit.[20]

11        The court finds it undisputed that after the agreement between Plaintiff and the

12   Department of Fish and Game was reached, Defendant Basch informed Plaintiffs several times

13   by letter that Plaintiffs needed to submit a complete set of grading plans and Plaintiffs had not yet

14   submitted them.   In September 2004, Plaintiff sent a letter to the County's risk manager

15   requesting an administrative hearing.   The undisputed facts also reveal that shortly after

16   Plaintiffs' engineer submitted a complete set of grading plans for "Site 2" (the Schub property) in

17   April 2005, the County issued a grading permit for that stretch of road.   In addition, the

18   undisputed facts state that neither Plaintiffs' road engineer, Greg Merrill, nor Plaintiffs' mobile

19   home pad engineer, Jim Bowling, experienced any delays or problems in processing multiple

20   grading permit applications on behalf of Plaintiffs.

21        Defendants have provided evidence as to the requirements to obtain a grading permit.

22   Defendants have provided evidence that Plaintiffs did not follow these procedures.   In the

23   opposition, Plaintiffs complain that neither Ms. Basch nor the Board of Supervisors  would meet

24

25        [20]  Defendants state that the Madera County Code adopts requirements from the Uniform
     Building Code pertaining to submitting plans by a registered civil engineer.   However,
26   Defendants fail to submit evidence of this adoption.   Madera County Code § 14.50.070 does
     adopt the standards for excavating and grading found in Chapter 70 of the Uniform Building
27   Code.

28                                            26

with Plaintiff him regarding his request for permit.   However, Plaintiffs do not provide evidence

that they did comply with the Madera County Code prior to April 2005, by providing a complete

set of grading plans.

Applying the <u>Mathews</u> test, Plaintiffs have not created a disputed issue of fact on whether

there was a due process violation.  Plaintiffs have not shown a private interest that was affected

by requiring Plaintiffs to provide grading plans to obtain a permit which outweighs Defendants'

interests.  Plaintiffs do have a private interest in obtaining the permit to grade a road necessary

for access to the property and by which they were required by contract to keep graded for other

landowners.   However, not providing Plaintiffs with a meeting to "discuss" the permit did not

deprive Plaintiffs of an interest in his property when the evidence before the court indicates that

Plaintiffs were informed that a complete set of grading plans were necessary and there is no

evidence Plaintiffs provided these plans.    Defendants' procedure also weighed against the risk

of an erroneous deprivation because requiring a complete set of plans ensures all information is

obtained to provide meaningful review.   Finally, Defendants have a strong interest in requiring a

complete set of plans prior to issuing permits.   An agency has a strong interest in maintaining its

procedures and the court "should lean heavily on the agency's expertise in fashioning its

application process." <u>Foss v. National Marine Fisheries Service</u>, 161 F.3d 584, 589 (9th Cir.

1998).   A procedure that does not require a meeting or hearing any time a person has questions

or concerns about the application process simply does not violate due process under the facts of

this case.   Requiring informal meetings with agency staff and/or formal meetings with the

overseeing board any time an applicant has questions or wants to discuss his permit would create

a huge burden on the agency.   The essence of due process is that the procedures be tailored to

insure that a claimant is given a meaningful opportunity to present his or her case.  <u>Mathews</u>,

424 U.S. at 348-49.  Plaintiffs have failed to show that the application process provided by

Defendants, which required submission of a complete set of grading plans and did not allow for

an informal meeting or hearing with the board of supervisors prior to submitting the plans and

27

1  the permit's formal denial, violated due process.

2        Accordingly, Defendants' are entitled to summary judgment on Plaintiffs' procedural due

3  process claim arising from Defendants' actions concerning the denial or delay in Plaintiffs

4  obtaining grading permits.   Based on Plaintiffs' description of the basis of his procedural due

5  process claim, this would include Defendants refusing to meet informally with Plaintiff to get the

6  permit reinstated on the Schub property and Defendants refusing to provide Plaintiff with a

7  hearing before the board of supervisors about the permit on the Schub property.   Because

8  Plaintiffs maintain there are other basis for his procedural due process claim and these basis have

9  not been addressed by Defendants in their motion for summary judgment, Defendants are not

10  granted summary judgment on the entirety of Plaintiffs' procedural due process claim.

11  **C. First Amendment Right to Petition**

12        Plaintiffs allege in the complaint that Defendants denied their First Amendment right to

13  petition the government by denying Plaintiff access to a government building to obtain an

14  application to renew the grading permit on the Schub property.   Defendants contend that

15  Plaintiffs' right to petition is legally deficient because the First Amendment does not pertain to

16  land use permit applications.

17        The First Amendment provides that "Congress shall make no law ... abridging ... the right

18  of the people to petition the Government for a redress of grievances."  U.S. Const., amend I.   The

19  right to petition the government for redress of grievances . . . in both judicial and administrative

20  forums . . . is fundamental to the very idea of the republican form of government.  United States

21  v. Cruikshank, 92 U.S. 542, 552 (1875), *abrogated on other grounds*.   The right to petition

22  extends to all departments of the government.   The Supreme Court has found that this right of

23  access "governs the approach of citizens or groups of them to *administrative agencies* (which are

24  both creatures of the legislature, and arms of the executive)."  California Motor Transport Co. v.

25  Trucking Unlimited, 404 U.S. 508, 510 (1972) (emphasis added) (citing Johnson v. Avery, 393

26  U.S. 483, 485 (1969)); Ex parte Hull, 312 U.S. 546, 549 (1941).

27

28                                                    28

1     Plaintiffs' Right to Petition Clause claim is based on Plaintiff's attempts in March 2004

2  to renew his grading permit on the Schub property by submitting the full filing fee.  The

3  undisputed facts show that Plaintiff received a Planning Department letter that stated his permit

4  had been cancelled because he no longer owned the this property.  Plaintiffs allege that Plaintiff

5  went to the Planning Department to explain that while he no longer owned the particular piece of

6  property at issue, he still maintained an easement that legally required him to continue to grade

7  and maintain the road.  Plaintiffs allege that when Plaintiff arrived at the Planning Department to

8  attempt to renew his grading permit, Defendant Basch directed him to leave the building.

9     The protections afforded by the Right to Petition Clause have been limited by the

10  Supreme Court to situations in which a plaintiff's associational or speech interests are also

11  implicated.  WMX Technologies Inc. v. Miller, 197 F.3d 367, 372 (9th Cir. 1999) (citing

12  McDonald v. Smith, 472 U.S. 479, 482-85 (1985), United Mine Workers of America v. Illinois

13  State Bar Ass'n, 389 U.S. 217, 222-23 (1967), and NAACP v. Button, 371 U.S. 415, 430-31

14  (1963)).  In WMX, the Ninth Circuit held that the plaintiff could not proceed on a civil rights

15  violation based on the defendants' actions concerning the plaintiff's application to obtain a use

16  permit for a proposed landfill.  WMX, 197 F.3d at 373.

17     Defendants have provided evidence and argument that Plaintiffs' Right to Petition Clause

18  claim does not concern an infringement by Defendants of either associational related rights or

19  speech related rights.   In response, Plaintiffs have not alleged that Plaintiffs' claim is related to

20  Plaintiffs' rights of association or speech.   Rather, Plaintiffs focus on Plaintiffs' dispute with

21  Defendants' characterization of their actions and the legality of Defendants' actions.  Absent

22  evidence of an infringement on associational related rights or speech related rights, Defendants

23  are entitled to summary judgment on Plaintiffs' Right to Petition Clause claim.   Accordingly,

24  Defendants' motion for summary judgment on the Right to Petition Clause claim is granted.

25  **D.  Contract Clause**

26     Plaintiffs allege that Defendants' continued denial of a grading permit, which resulted in

27

28                                         29

1    Plaintiffs' inability to grade an existing private road, placed Plaintiffs in the position of being

2    forced against their will to violate the specific terms of the contract with Mr. Schub.  Plaintiffs

3    allege that Mr. Schub sued Plaintiffs for breach of this contract.   Defendants request summary

4    judgment on Plaintiffs' Contract's Clause claim because the Contracts Clause does not apply to

5    actions taken under a statute or regulation.   In addition, Defendants contend Plaintiffs cannot

6    show Defendants' actions substantially interfered with Plaintiffs' obligations under the contract.

7        The Contracts Clause states that "no State shall ... pass any ... Law impairing the

8    Obligation of Contracts." U.S. Const, art. I, § 10.     The Contracts Clause applies to municipality

9    and county governments' laws and regulations.  Connolly v. Pension Benefit Guaranty Corp.,

10   631 F.Supp. 640, 648 (C.D. Cal. 1984) (citing Textile Workers Pension Fund v. Standard Dye

11   and Finishing Co., Inc, 725 F.2d 843 (2d Cir. 1984).

12
           Whilst thus uniformly holding that [a] provision is directed against
           legislative ... acts, this court, with like uniformity, has regarded it as
13         reaching every form in which the legislative power of a state is
           exerted, whether it be a constitution, a constitutional amendment, an
14         enactment of the legislature, a by-law or ordinance of a municipal
           corporation, or a regulation or order of some other instrumentality of
15         the state exercising delegated legislative authority.

16   Ross v. State of Oregon 227 U.S. 150, 162-163 (1913); see also Cuyahoga River Power Co. v.

17   City of Akron, 240 U.S. 462 (1916).  The Supreme Court has formulated a two-step inquiry for

18   analyzing cases under the Contracts Clause.  First, the plaintiff must show that the challenged

19   law substantially impairs some contractual obligation.  Allied Structural Steel Co. v. Spannaus,

20   438 U.S. 234, 244 (1978).   "Minimal alteration of contractual obligations may end the inquiry at

21   its first stage.  Severe impairment, on the other hand, will push the inquiry to a careful

22   examination of the nature and purpose of the state [action]."  Spannaus, 438 U.S. at 245.

23   Second, after showing such an impairment, the challenger must demonstrate that legitimate

24   governmental interests do not justify the impairment. Spannaus, 438 U.S. at 244-45;  United

25   States Trust Co. v. New Jersey, 431 U.S. 1, 17, 21 (1977).

26       The question to be asked in an action brought under the Contracts Clause is whether a

27

28                                          30

change in the law has "operated as a substantial impairment of a contractual relationship."
General Motors Corp. v. Romein,  503 U.S. 181, 186 (1992); Campanelli v. Allstate Life Ins.
Co., 322 F.3d 1086, 1098 (9th Cir. 2003).  Only statutes that impair a specific contractual
provision are subject to constitutional scrutiny.  Rui One Corp. v. City of Berkeley, 371 F.3d
1137, 1151 (9th Cir. 2004).   An express requirement of a Contracts Clause claim is that a state or
municple law, statute, or regulation operated to impair a contractual relationship.   In the
opposition, Plaintiffs concede that the Contracts Clause claim is not based on a law, statute, or
regulation.   Rather, Plaintiffs claim that Defendants actions were not taken in accordance with
any existing laws and they had no rational basis for their actions.   Because Plaintiffs have
clarified that they are proceeding with this claim on evidence that Defendants' actions, rather
than a county regulation or ordinance, impaired the contract with Mr. Schub, Plaintiffs' Contracts
Clause claim fails.  While Defendants' actions may violate other rights, they do not violate the
Contracts Clause because no law, statute, regulation, or ordinance is at issue.   Thus, Defendants
are entitled to summary judgment on Plaintiffs' Contracts Clause claim.

## ORDER

Accordingly, based on the above memorandum opinion, IT IS HEREBY ORDERED that
Defendants' motion for summary judgment is GRANTED in part and DENIED in part.
Specifically, the court ORDERS that:

1. Defendants' motion for summary judgment on Plaintiffs' equal protection claim
   (Count 3) is GRANTED in part and DENIED in part;

   a. Defendants' motion for summary judgment on Plaintiffs' contention that
      Defendants treated them differently when they cited Plaintiffs and required
      Plaintiffs to have a permit to grade a 300 foot driveway and Plaintiffs'
      contentions that Defendants treated them differently when Defendants did
      not give them a 15 day period between notice and being cited for grading
      the 300 foot driveway and cited Plaintiffs for grading the 300 foot

driveway is DENIED;

      b.     Defendants' motion for summary judgment on the other factual basis of Plaintiffs' equal protection claim is GRANTED;

2.    Defendants' motion for summary judgment on Plaintiffs' procedural due process claim (Count 2) is GRANTED in part and DENIED in part;

      a.     Defendants' motion for summary judgment on Plaintiffs' claims arising from Defendants' actions concerning the denial or delay in Plaintiff obtaining grading permits, including Defendants' refusal to meet with Plaintiff to get the permit reinstated on the Schub property, is GRANTED;

      b.     Defendants' motion for summary judgment on the other factual basis of Plaintiffs' procedural due process claim is DENIED;

3.    Defendants' motion for summary judgment on Plaintiffs' First Amendment Right to Petition Clause claim (Count 1) is GRANTED;

4.    Defendants' motion for summary judgment on Plaintiffs' Contract Clause claim (Count 4) is GRANTED.

IT IS SO ORDERED.

**Dated:     February 28, 2007          /s/ Anthony W. Ishii**
0m8i78                                UNITED STATES DISTRICT JUDGE